Osburn v. State.

---

## OSBURN v. THE STATE.

[No. 20,378. Filed February 23, 1905.]

1. APPEAL AND ERROR.—*New Trial.*—*Misconduct of Juror.*—*Bill of Exceptions.*—Where the misconduct of a juror is assigned as a cause for a new trial, but the affidavits in support of such motion have not been brought into the record by a bill of exceptions, no question is presented. p. 264.

2. NEW TRIAL.—*Joint Assignment.*—Where four separate rulings are jointly assigned as a reason for a new trial, such motion should be overruled if one of such rulings is correct. p. 267.

3. SAME.—*Misconduct of Prosecutor.*—*Argument to the Jury.*—Where an expert testified that in his judgment a wound on decedent was caused by a stroke with a closed pocket knife, and in his argument to the jury the prosecuting attorney said, "When Joe [defendant] struck the old man with this knife," and on interruption by counsel for defendant, further said, "I have a right to say it was done with this knife," it was not error for the court to refuse to compel a retraction of such statements, and to admonish the jury to disregard same, even though the inference from the evidence might be incorrect. p. 268.

4. SAME.—*Misconduct of Prosecutor.*—*Argument to the Jury.*—A new trial can not be granted because of improper remarks by the prosecuting attorney, where defendant's substantial rights are not invaded. p. 269.

5. SAME.—*Instructions in Criminal Case.*—*How Made Part of Record.*—Instructions in a criminal case which are tendered and refused can be made part of the record only by a bill of exceptions. p. 269.

Osburn *v.* State.

6. NEW TRIAL.—*Instructions.—Joint Assignment.*—A motion for a new trial, assigning as error the giving of certain instructions as an entirety, should be overruled if one of such instructions is good. p. 269.

7. SAME.—*Instructions.—How Considered.*—Instructions complained of should be considered in connection with all of the other instructions given in the case.  p. 270.

8. HOMICIDE.—*Murder.—Purpose.—Malice.—Premeditation.*—The elements of purpose and malice must concur in a homicide in order to constitute murder in the second degree, and premeditation must concur with both to constitute murder in the first degree.  p. 270.

9. SAME.—*Intent.*—A person having no capacity for forming a criminal intent can not legally be convicted of homicide.  p. 270.

10. TRIAL.—*Criminal Case.—Burden of Proof.—Material and Incidental Facts.*—The material elements in a charge of crime must be proved beyond a reasonable doubt, but the incidental or subsidiary facts need not be proved in such manner, and the facts must all be considered together in arriving at a verdict.  p. 271.

11. EVIDENCE.—*Homicide.—Character of Decedent as Dangerous Man. —When Proof Admissible.*—Where the evidence shows without contradiction that defendant was the aggressor in the altercation which ended in decedent's death, evidence of the character of decedent as a dangerous person is inadmissible.  p. 271.

12. TRIAL.—*Oral Motion to Strike Out Evidence.*—An oral motion to strike out, which identifies the evidence sought to be stricken out, is sufficient.  p. 273.

13. SAME.—*Motion to Strike Out Evidence.—No Objection When Introduced.*—It is discretionary with the trial court to strike out incompetent evidence where no objection was made when such evidence was admitted.  p. 273.

14. EVIDENCE.—*Real.—Knife.*—When there is some evidence, whether direct or circumstantial or both, that a wound on decedent was caused by a knife, a knife taken from defendant the next morning after the altercation is competent evidence.  p. 274.

15. SAME.—*Cross-Examination.—Province of.*—Where evidence is offered in chief on a certain subject, the opposite party has the right to go into the full details of such subject.  p. 274.

16. SAME. — *Relations Between Defendant and Decedent. — Cross-Examination.—Harmless Error.*—Where defendant introduces a witness and proves the relations existing between defendant and decedent, it is not reversible error for the court to permit the prosecution, on cross-examination, to go into other circumstances showing such relationship.  p. 275.

17. SAME.—*Relations Between Decedent and Defendant.—Cross-Examination.*—Where defendant in a homicide case called a witness to prove the differences between himself and decedent, and such witness testified without objection that deceased directed witness to inform

defendant that he (deceased) would make no more payments on the farm, to which defendant réplied, "You don't think he is going back on me, do you?" it was not prejudicial error to prove by such witness on cross-examination, over defendant's objection, that in another conversation concerning the same transaction defendant said, "If he goes back on me he will never go back on any one else," since the State was entitled to prove such declarations in chief and it does not appear that the effect was different by reason of their being brought out on cross-examination. p. 276.

18.  APPEAL AND ERROR.—*New Trial.—Evidence.—Sufficiency.*—Where there is a conflict·in the evidence as to the defendant's sanity, the verdict of the jury is conclusive. p. 276.

From Adams Circuit Court; *Richard K. Erwin,* Judge.

Prosecution by the State of Indiana against Joseph Osburn for murder. From a judgment entered on a verdict of guilty of murder in the second degree and assessing a penalty of life imprisonment, defendant appeals. *Affirmed.*

*David E. Smith, D. D. Heller & Son* and *William M. Amsden,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for the State.

MONKS, J.—Appellant was charged by indictment with murder in the first degree, in the killing of his·father-in-law, John Busenbark. The plea was not guilty. A special plea that he was a person of unsound mind when the alleged offense was committed was filed. A trial of said cause resulted in a verdict of guilty of murder in the second degree. Over a motion for a new trial, judgment was rendered on the verdict. The overruling of the motion for a new trial is assigned for error.

1.  Misconduct of a juror is assigned as a cause for a new trial, but the affidavits in support of said motion have not been made a part of the record by bill of exceptions. There is nothing, therefore, in the record to sustain said cause for a new trial. *Crawford* v. *State* (1901), 155 Ind. 692, 696, 697, and cases cited.

It appears from the evidence, without conflict, that appellant was, at the time of the killing of John Busenbark,

thirty-five years of age, and weighed about 140 pounds; he was married, and had three children, the oldest being about eight years of age. John Busenbark, the deceased, was a widower, sixty-eight years old, and weighed about 180 pounds. He resided with the appellant who was his son-in-law, on a farm of 120 acres in Adams county, owned by them as tenants in common. This farm they had bought in March, 1903, and executed a mortgage thereon for $4,500, the unpaid purchase money. The same month they moved to the farm from Grant county, Indiana. It was arranged that appellant was to do the work on the farm and hire one hand, and receive three-fourths of the crops, and the deceased one-fourth; and they were to own the stock on the farm in the same proportion. The deceased was to do no work, except to feed his own driving horse. They continued to live together on the farm until September 8, 1903. In the meantime, appellant, owing to the bad season of that year, was troubled about his ability to meet his payments on the land. It was reported to him that the deceased had said to Ira Richards, appellant's hired hand, that when Joe (appellant) "could not meet the payments, and the farm had to sell, he intended to buy it in." Appellant had also been informed by Richards that the deceased had said he would not make any more payments on the land, to which appellant responded: "You don't think he is going back on me, do you?" Afterwards, in another conversation, appellant said to Richards: "If he [the deceased] goes back on me, he will never go back on anyone else." They had a number of disputes about the farm, its management, and about paying for it, and there was bad feeling between them on account of these difficulties. Appellant desired to sell the land, and on September 8, 1903, after the return of the deceased from Decatur, about 3 o'clock in the afternoon, they started from the house to the barn, and were talking about the sale of the farm. When they came to a wagon, upon which Ira Richards was engaged in loading manure,

after a few words appellant struck the deceased in the chest, and the combat commenced, in which appellant inflicted injuries upon the face and head of the deceased, which caused his death next day between 3 and 4 o'clock in the afternoon. The nose of deceased was broken between the eyes, and lay over on the side; his face was mashed in; the bones under the eyes broken and crushed in; the upper jaw broken (just below the malar bone) in two pieces, and the "roof of the mouth was caved in." His face was swollen so that his eyes were closed thereby. His neck had the appearance of having been clinched with the fingers, as though it had been crushed by the hand, the fingers and the thumb. There were three wounds on the forehead above the eyes, made with some blunt instrument. Two witnesses, physicians, testified that in their opinion all of the injuries were not inflicted with the naked fist, that some of them could not have been so made. One physician testified that, in his judgment, one wound on the right side of the nose, extending near to the corner of the mouth, was made with the end of a closed knife held in the hand. There were all kinds of stones and bricks in the barnyard, and within five or six feet of where the deceased was lying when he was injured by appellant.

Ira Richards, appellant's hired hand, and Dale Osburn, appellant's oldest son, were the only persons who saw the difficulty, except the parties thereto. Richards testified that he was loading manure on the wagon at the front end, the rear end being toward the south. When appellant and the deceased approached the wagon from the south, they were talking about the farm. The deceased sat down upon the middle bottom board of the wagon-bed, which projected about eighteen inches from the rear axle, and commenced whittling the upright on the side of the wagon-bed with a small black-handled knife. Appellant stood from four to six feet from the deceased, and spoke about selling the farm, and words passed back and forth between them, when ap-

pellant stepped toward the deceased and struck him in the breast.    The deceased "slid off the board and struck at appellant as he slid."    As his feet met the ground he struck at appellant again.    Appellant stepped sideways in a south-westerly direction as the deceased struck at him; he did not know whether either blow hit appellant.    The next thing witness saw, the deceased was on the ground, and appellant was pounding him in the face.    He did not see anything in appellant's hands, and did not know whether he had anything in his hands or not while he was striking the deceased in the face.    He struck him as many as five or six times.    Witness walked from the front end of the wagon around the deceased, saying as he went: "Joe! Joe! don't kill him," and took hold of appellant's arm and took him away.    Appellant's right hand had blood on it, and he went to the tank near by and washed his hands.    Dale Osburn testified that he started from the house to the barn with appellant—his father—and the deceased—his grandfather; that he heard the deceased say to appellant that he did not want to have any trouble.    While deceased was sitting on the back end of the wagon appellant struck the first blow, hitting the deceased on the breast with his fist, and grabbing at his throat; at once the deceased slid off the board and struck at appellant twice, not hitting him either time; then appellant struck the deceased several times, and the deceased stumbled and fell, and appellant knelt down on his knees and commenced hitting the deceased on the face, when Richards came and took him away from the deceased.    The sheriff of the county testified that he examined appellant's right hand in the evening of the 8th of September, and there were no "injuries or marks thereon, and none on or by the knuckles."'    Appellant did not testify in said cause.

2.    Four separate and distinct rulings of the court below made against appellant in overruling objections of appellant to the conduct of the prosecuting attorney in his argument to the jury are assigned, jointly or in gross, as the

fourth cause for a new trial. To render the same available, all of said rulings must be erroneous. *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, 663, 664; *Ohio, etc., R. Co.* v. *McCartney* (1890), 121 Ind. 385, 387.

3. The bill of exceptions contains but a meager statement of the alleged misconduct of the prosecuting attorney, but we may assume therefrom that he was arguing to the jury, among other things, that appellant inflicted some of the injuries upon the face and head of the deceased with a knife which he held in his hand, and that, while so contending, he held in his hand the knife exhibited to the jury as the one taken from appellant, and said: "When Joe [appellant] struck the old man with this knife." Whereupon appellant objected, because there was no evidence that appellant used a knife in the combat with the deceased, or struck or attempted to strike him with a knife, and moved that the court require the prosecuting attorney to withdraw said statement, and that the court admonish the jury to disregard the same, which motion was overruled by the court; to which ruling appellant excepted. Afterwards, during the argument, the prosecuting attorney said, "I have a right to say it was done with this knife," when a like objection and motion were made, and the motion overruled, and exception taken. The physician who was called to treat the deceased on the same day he was injured, and who assisted at the "post-mortem examination," testified at the trial that he thought the wound on the cheek-bone was made "with a closed knife held in the hand and struck against the cheek-bone, fracturing it," giving his reasons for such opinion. Other witnesses testified as to the character and nature of the injuries on the face and head of the deceased, and that in their opinion all of said injuries were not inflicted with the naked fist. It is evident, from an examination of the evidence, that the prosecuting attorney had the right to argue to the jury that the injuries on the face were not all made with the naked fist, but that they were made with

some hard substance, as a knife held in the hand of appellant. Even if the prosecuting attorney drew a wrong inference from the facts in evidence, this would not justify an interference by the court. *Warner* v. *State* (1888), 114 Ind. 137, 140. It follows that the court did not err in overruling appellant's motion in regard to withdrawing the statements above mentioned of the prosecuting attorney from the jury.

4.  As two of said rulings assigned as the fourth cause for a new trial were not erroneous, we need not consider the others in said specification, for the reason that under the rule they are not available. We have examined them, however, and under the authorities in this State they were not sufficient, even if properly presented, to justify a reversal of the cause. *Combs* v. *State* (1881), 75 Ind. 215, 218-221; *Proctor* v. *DeCamp* (1882), 83 Ind. 559-561; *Epps* v. *State* (1885), 102 Ind. 539, 550-552; *Anderson* v. *State* (1886), 104 Ind. 467, 475; *Shular* v. *State* (1886), 105 Ind. 289, 302, 303, 55 Am. Rep. 211; *Boyle* v. *State* (1886), 105 Ind. 469, 480, 481, 55 Am. Rep. 218; *Warner* v. *State, supra; Livingston* v. *State* (1895), 141 Ind. 131, 133, 134.

5.  The court gave instructions one to thirty-six, requested by the State, to the jury. In a criminal case, instructions tendered and refused, and those given by the court, and exceptions to the giving and refusal to give instructions, can only be made a part of the record by a bill of exceptions. *Bealer* v. *State* (1898), 150 Ind. 390-392, and cases cited.

6.  This has been done in this case, but the exception of appellant to said instructions one to thirty-six was to the same as an entirety and not to each instruction separately. Appellant claims that several of said instructions were erroneous. Under the well-settled rule, unless all of said thirty-six instructions were erroneous, said contention is not available. Ewbank's Manual, §28, p. 36; *State* v. *Ray*

(1897), 146 Ind. 500; *Jones* v. *State* (1903), 160 Ind. 537, 539, 540; *Ohio, etc., R. Co.* v. *McCartney* (1890), 121 Ind. 385, 387, 388. It is admitted by appellant that a number of said instructions stated the law correctly. As some of said instructions correctly stated the law, the errors, if any, committed in giving the others, furnish no ground for reversal.

7. We have, however, examined the instructions complained of, and when the same are considered, as they must be, in connection with all the other instructions given in the cause, they afford no substantial ground for reversal. *Shields* v. *State* (1897), 149 Ind. 395, 406, and cases cited; *Thrawley* v. *State* (1899), 153 Ind. 375, 379.

The court gave to the jury seven instructions requested by appellant on the law of self-defense, and he complains of the refusal of the court to give seven other instructions requested by him on the same subject. The said instructions given by the court covered those refused, so far as they stated the law applicable under the evidence, and were as favorable to appellant as he had any right to demand.

8. Instruction eighty-six, requested by appellant, was properly refused, for the reason, if for no other, that it declared in effect that "a killing in a combat which engendered hot blood would be murder in the first degree or murder in the second degree, if the elements of purpose or malice concur in the act." In such a case the killing could not be even murder in the second degree, unless the elements of purpose and malice concur in the act. *Patterson* v. *State* (1879), 66 Ind. 185, 190. As the element of premeditation is omitted, it could not be murder in the first degree. *Patterson* v. *State, supra.*

9. Instruction 107, requested by appellant and refused by the court, in effect would have informed the jury that if they believe the defendant was of unsound mind at the time the offense was committed he should be acquitted, even if all the essential elements of either murder in the first or

second degree or manslaughter were established. It is said in 1 Bishop, Criminal Law (8th ed.), §396a: "Without this [criminal] intent there is no crime, so there can be no criminal intent without the mental capacity for it. The lack of such mental capacity is termed insanity." Said instruction seems to have been drawn on the theory that a person of sufficient mental capacity to entertain criminal intent could at the same time be a person of unsound mind. This was error. 1 Bishop, Crim. Law (8th ed.), §§375-377, 381(2), 396a; Gillett, Crim. Law, §8. It follows that said instruction was properly refused.

10. It is necessary that every essential element of the crime charged against an accused should be proved by the evidence beyond a reasonable doubt, but it is not necessary that all the incidental or subsidiary facts should be proved beyond a reasonable doubt. "Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of testimony to be determined from the whole body of the evidence. A circumstance considered apart from the other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances may be so well supported as to remove all doubts as to its existence as detailed by the witness. Acts considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt." *Goodwin* v. *State* (1884), 96 Ind. 550, 571; *Hinshaw* v. *State* (1897), 147 Ind. 334, 379-381; *Wade* v. *State* (1880), 71 Ind. 535-539; Gillett, Crim. Law (2d ed.), §911, p. 690. Instruction 119, requested by appellant, was properly refused under this rule.

11. Appellant, under the eighth specification in his motion for a new trial, claims that the court erred in sustaining the motion of the prosecuting attorney to strike out and withdraw from the jury the evidence given on behalf of appellant as to the general reputation of the deceased for

peace and quietude. As a general rule, the character of the deceased is not in issue in a trial for homicide, and evidence to show his general reputation as a dangerous and violent man is inadmissible. Bishop, Crim. Proc. (4th ed.), §§609, 613, 614; 5 Am. and Eng. Ency. Law (2d ed.), 872; *Dukes* v. *State* (1858), 11 Ind. 557, 71 Am. Dec. 370; *Boyle* v. *State* (1884), 97 Ind. 322, 324, 325. There are, however, exceptions to this rule. Wharton, Crim. Ev. (9th ed.), §84, after reviewing the authorities, lays down the general rule as follows: "Taking the authorities as a whole, therefore, we may hold that it is admissible for the defendant, having first established that he was assailed by the deceased, and in apparent danger, to prove that the deceased was a person of ferocity, brutality, vindictiveness, and excessive strength; such evidence being offered for the purpose of showing either (1) that the defendant was acting in terror, and hence incapable of that specific malice necessary to constitute murder in the first degree; or (2) that he was in such apparent extremity as to make out a case of self-defense; or (3) that the deceased's purpose in encountering the defendant was deadly. It is also admissible for the defendant, in order to excuse a violent repulsion of an assault, to prove that he was so overmatched in strength that he had, when attacked, no other means of escaping from death or great bodily harm. But such evidence can never be received for the purpose of justifying an attack by the defendant on the deceased."

It was said in Wharton, Crim. Ev. (9th ed.), §69, concerning such evidence, that "he must first prove that he was attacked; and this ground being laid, it is legitimate for him to put in evidence whatever would show he had reason to believe such attack to be felonious." See, also, Wharton, Crim. Ev. (9th ed.), §757, p. 657.

The rule is stated in 2 Bishop, Crim. Proc. (4th ed.), §§613-615: "613. 1. Not even the defendant, it is believed, may bring forward in evidence the bad character of

the deceased in general, where he does not particularize the trait, or prove an evil trait not related to the special matter of the defense. Even he can not show the trait until a foundation for it is laid in the contentions and other proofs of the case. But—2. When the foundation is thus laid, as, when he, claiming to have acted in self-defense, has shown that the deceased attacked him, he may then give evidence of a generally known evil trait of a sort which might properly influence his conduct; as, that the attacking person was in character quarrelsome and dangerous. On the other hand—614. Where the defendant made the attack, as appearing on the direct proofs, and he persisted in the quarrel, evidence of the quarrelsome character of the deceased is not admissible. For one has no greater right to attack or kill a quarrelsome body than a peaceable; but in self-defense, a man set upon may adapt his measures to the seeming danger, which increases with the dangerous character of the assailant. 615. These cases, wherein it is plain which party made the attack, with the conclusion that the deceased's quarrelsomeness may be shown when the one did, not when the other, present the doctrine clearly and justly." See, also, *Boyle* v. *State, supra.*

The evidence in this case shows without conflict that appellant first voluntarily struck the deceased, and was the aggressor in the conflict which resulted in the death of the deceased. It is clear, therefore, that the court did not err in sustaining the motion to strike out the testimony mentioned.

12. It is insisted by appellant that the motion to strike out said testimony should have been overruled, for the reason that it "did not contain the testimony sought to be stricken out." The motion was oral, and clearly identified the testimony affected by it, and was not insufficient for the reason urged.

13. It is also urged that said motion should not have been sustained, because no objection was made by the State

when said testimony was given. It has been held by this court that such motions should be seasonably made, and that, as a general rule, it is not reversible error to overrule the same if not so made, or if no objection was made to the testimony when offered. *Ginn* v. *State* (1903), 161 Ind. 292, 294; *Lane* v. *State* (1898), 151 Ind. 511, 516, and cases cited. It may be true that, if the court had overruled said motion, the State, under the rule urged, would have had no ground for complaint; but it is equally true that, as the testimony was not admissible, appellant can not successfully complain because the same was stricken out. *Hanson* v. *Cruse* (1900), 155 Ind. 176, 178; *Bollman* v. *Gemmill* (1900), 155 Ind. 33, 36.

14. Appellant's knife, which was taken from him on the morning of September 9, 1903, after he was placed in jail, was exhibited to the jury, over the objection of appellant. One of the witnesses had testified that in his opinion one of the wounds on the face of the deceased was made by a closed knife held in the hand of the person striking him. Moreover, the character of the wounds was such that whether or not they were inflicted by the naked fists of appellant, or some hard and blunt instrument, like a rock or knife, were questions for the jury. There was no error in permitting the jury to inspect said knife. *McDonel* v. *State* (1883), 90 Ind. 320, 327, 328.

15. Appellant called a witness, who testified in chief concerning disputes and differences between appellant and the deceased, and to what was said by each of them to the witness concerning the same, when the other was not present, while living on the farm in Adams county, and of their attempts to settle and adjust their differences in regard to said land, and the disposition thereof, and the payment therefor, by selling or dividing the same. Said witness testified, on cross-examination, that at the request of the deceased he had informed appellant that the deceased would not make any more payments on the land, and that

appellant responded: "You don't think he is going back on me, do you?" This was said by appellant in a conversation testified about in chief. This evidence was given without objection. The witness testified further, on said cross-examination, that when he informed appellant that the deceased said he would make no more payments on the land, appellant said: "If he goes back on me he will never go back on anyone else." This statement was made to him by appellant in conversation which he had not testified to in chief. Appellant objected to the giving of the statement in evidence, for "the reason that it is inquiring about a conversation concerning which the witness was not examined in chief, and is not proper cross-examination," which objection was overruled by the court, to which ruling an exception was reserved by appellant. After said objection was overruled and the evidence given, appellant examined the witness, and brought out what was said by appellant in the conversation in addition to the statement admitted over his objection. It is true, as contended by appellant, that a cross-examination must be confined to the subject-matter of the examination in chief; but, when the direct examination opens on a general subject, the cross-examination may go into any phase of that subject, and can not be restricted to mere parts of a general and continuous subject which constitute a unity. *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 557; *Vogel* v. *Harris* (1887), 112 Ind. 494, 496; *DeHaven* v. *DeHaven* (1881), 77 Ind. 236, 239.

16. The general subject of the examination in chief involved the relations, whether friendly or hostile, existing between appellant and the deceased, and the trouble between them in regard to the payment of the unpaid purchase money on the land, and the disposition of the land, and it is by no means certain that the testimony objected to was not proper on cross-examination, but we need not decide whether it was or not, for conceding that it was not proper, still no error sufficient to constitute a cause for reversal was

committed. *Tobin* v. *Young* (1890), 124 Ind. 507, 513; *Sexson* v. *Hoover* (1891), 1 Ind. App. 65, 69; *Bohan* v. *Avoca Borough* (1893), 154 Pa. St. 404, 408, 409, 26 Atl. 604; *Jackson* v. *Litch* (1869), 62 Pa. St. 451; *Bickel* v. *Philadelphia, etc., Co.* (1880), 2 Walker (Pa.) 150, 157; *Chapman* v. *Loomis* (1870), 36 Conn. 459, 460; *Western Union Tel. Co.* v. *Buskirk* (1886), 107 Ind. 549, 552; *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 122, 123; *Stipp* v. *Claman* (1890), 123 Ind. 532, 538, 539; *Miller* v. *Preble* (1895), 142 Ind. 632, 635, 636; Ewbank's Manual, §§281, 282.

17. The State was entitled to prove said declaration of appellant, and the most that can be said is that it was not proper to be brought out on cross-examination. Appellant was allowed on reëxamination of the witness to bring out all the conversation in which the statement objected to was made. It does not appear that appellant was affected by the admission of said evidence on cross-examination in any different way from what he would have been if said witness had been a witness for the State and had testified to said statement in his examination in chief in regular order. It can not be said, therefore, that the error, if any was committed, was prejudicial to appellant.

18. Appellant further insists that the verdict of the jury was contrary to the evidence. To support appellant's special plea that he was a person of unsound mind when the alleged offense was committed, a number of witnesses testified that appellant was a person of unsound mind. There were witnesses who testified that he was a person of sound mind. The evidence on this issue was conflicting. In a criminal case the jury are the exclusive judges of the facts proved, and of all inferences to be drawn therefrom. *Braxton* v. *State* (1901), 157 Ind. 213, 216; *Burrows* v. *State* (1894), 137 Ind. 474, 477, 45 Am. St. 210; *Lee* v. *State* (1901), 156 Ind. 541, 546. In a criminal case this court can not weigh the evidence. *Rinkard* v. *State* (1901), 157

Ind. 534, 541, 543, 544; *Coppenhaver* v. *State* (1903), 160 Ind. 540, 551, 552; *Keith* v. *State* (1901), 157 Ind. 376, 383; *Braxton* v. *State, supra; Sharp* v. *State* (1903), 161 Ind. 288, 290; *Lee* v. *State, supra; McCaughey* v. *State* (1901), 156 Ind. 41, 44; *Deal* v. *State* (1895), 140 Ind. 354, 360; *Lillard* v. *State* (1898), 151 Ind. 322, 324.

After a careful examination of the evidence under the rules stated, we are satisfied that the verdict is neither contrary to the law nor to the evidence.

Judgment affirmed.