Surber v. The State.

No. 11,727.

## SURBER v. THE STATE.

CRIMINAL LAW.—*Manslaughter.*—*Indictment.*—*Duplicity.*—An indictment, charging that the defendant at, etc., on, etc., did unlawfully and feloniously, without malice, involuntarily kill A. by shooting, etc., the defendant then and there being in the commission of an unlawful act, to wit, drawing a deadly weapon, to wit, a revolver, upon A., and not in defence of his person or property, or of those entitled by law to his protection, whereby, etc., shows an involuntary killing without malice, while committing an unlawful act, and is good as a charge of manslaughter, and is not bad for duplicity.

SAME.—*Evidence.*—*Declarations.*—*Res Gestæ.*—Declarations of others, in the presence of the accused, immediately following the fatal act, are part of the *res gestæ*, and admissible in evidence against the accused.

SAME.—*Practice.*—*Instructions.*—Instructions asked after the argument begins may be refused without error.

SAME.—*Attorneys.*—Counsel may be called in behalf of the State to assist the prosecuting attorney, and the argument may be opened either by such counsel or by the prosecuting attorney.

SAME.—*Involuntary Killing while Engaged in Commission of Unlawful Act.*— Our statute makes it an offence to draw a deadly weapon upon another, and a person who does this commits an unlawful act, and if death results he is guilty of felonious homicide.

SAME.—*Voluntary Drunkenness.*—The voluntary drunkenness of the defendant does not change the unlawful character of the act of purposely pointing a loaded pistol at another.

From the Morgan Circuit Court.

*W. R. Harrison, W. E. McCord, G. W. Grubbs* and *M. H. Parks,* for appellant.

*F. T. Hord,* Attorney General, *F. P. A. Phelps,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ELLIOTT, J.—The fourth count of the indictment upon which the judgment of conviction rests charges that " the defendant did unlawfully, feloniously, and without malice, express or implied, and involuntarily kill one Thomas Burgess, by then and there shooting him, the said Thomas Burgess, in and upon the head with a certain revolver, loaded with gunpowder and leaden ball, which he, the said George Surber, then and there had and held in his hand, while he, the said

George Surber, was then and there in the commission of an unlawful act, to wit, unlawfully drawing a certain dangerous and deadly weapon upon the said Thomas Burgess, then and there being, he, the said George Surber, not then and there drawing said dangerous and deadly weapon, to wit, said revolver, in defence of his person or property, or in defence of those entitled to his protection by law, whereby, and by means of said unlawful drawing of said revolver, as aforesaid, upon the said Thomas Burgess, said revolver was discharged at, against and upon the head of the said Thomas Burgess, then and there being, and him, the said Thomas Burgess, did then and there mortally wound, and of which wound so inflicted, as aforesaid, the said Thomas Burgess did then and thereafter languish, and, so languishing, did thereafter, on the 26th day of January, 1883, die."

The principal point made against this count of the indictment is, that it does not show that the appellant was engaged in the perpetration of an unlawful act at the time he killed the deceased. We think this position is not tenable. It is made a criminal offence for any person to draw a deadly or dangerous weapon upon another, and the indictment clearly shows that the killing was done while the appellant was engaged in drawing a dangerous and deadly weapon upon the man slain by him. R. S. 1881, section 1984.

The indictment is not bad for duplicity. It charges but one unlawful act and one killing while engaged in the commission of that act, and these are elements of a single crime. The averment that the appellant did unlawfully and feloniously shoot the deceased is not a separate and distinct charge; it is but a part of the substantive charge embodied in the whole count, considered, as it must be, as an entirety. Nor is the averment inconsistent with the allegations with which it is associated, for it is perfectly consistent to affirm that a defendant did shoot the deceased, although he did it involuntarily. Whatever the manner of the shooting, the fact remains that the defendant did do it.

The State was permitted to introduce the testimony of Mary Lapossa, that "After the shot had been fired, and Thomas Burgess had been shot and fallen, and the defendant had approached the body of the deceased, and had drawn his coat, and inquired ' who shot deceased?' and put his hand back to his pocket at the hip, some person in the room where the deceased was shot and had fallen called out that the girls— there were some half dozen girls and about a dozen men in the room—had better go in the kitchen, as the defendant might shoot somebody else." We have no doubt that this testimony was competent.

What a bystander says during an occurrence, and in the presence of the actors, is competent as part of the *res gestæ.* *Baker* v. *Gausin,* 76 Ind. 317 ; *Wood* v. *State,* 92 Ind. 269. In this instance the transaction had not fully closed; there was, as appears from the testimony of some of the other witnesses, no perceptible interval between the shooting and the statements of the bystander. In the testimony we have quoted, it appears that the transaction was a continuous one, for the appellant was still a prominent actor in the affair. *Puett* v. *Beard,* 86 Ind. 104.

The testimony was competent as tending to establish an admission on the part of the accused. The question which he asked was followed by the statement of the bystander charging him with having shot the deceased, and as he did not deny the charge, some grounds for an inference against him were established. It may be that the evidence was weak, but nevertheless it was evidence tending to establish a relevant fact. It is a familiar elementary principle, that silence, when the accused is under no restraint and at full liberty to speak, may sometimes be regarded as a tacit admission. At all events all such matters are proper for the consideration of the jury. *Pierce* v. *Goldsberry,* 35 Ind. 317 ; *Puett* v. *Beard, supra.*

It is not error for the court to refuse to give instructions asked after the argument has commenced. R. S. 1881, sec. 1823.

The State may be represented by counsel called in to assist

the prosecuting attorney. *Wood* v. *State, supra.* It is not material whether the argument is opened by the prosecuting attorney or by counsel associated with him, and instructions asked after the argument has begun, whether opened by the prosecuting attorney or his associate, are not seasonably requested.

We are earnestly asked to reverse upon the evidence, and, impressed by the earnestness of counsel, we have given the testimony a careful examination. The deceased was killed at the house of Joseph Lapossa to which he had gone in company with the accused to attend a dancing party. Both had been drinking whiskey, and the appellant was intoxicated. No witness saw the pistol drawn or fired, but many testified that the shot came from the part of the room where the accused was sitting. He was the first to reach the deceased after he had fallen, and, according to the testimony of several witnesses, simulated violent grief. The two men were often together, and yet there is evidence of violent and threatening language used by the accused to the deceased.

Stephen Chenoweth testified that he was a justice of the peace, and that on the night the shooting took place the accused came to him and had with him a conversation respecting the occurrence. We copy from the record the material part of the testimony of this witness: " He came to me the same night and asked me who I was going to have arrested. I said I wasn't going to have anybody arrested. He said, ' You can't arrest me, for I wasn't in the house at the time of the shooting.' Afterwards, the same night, he came to me and said he was mistaken, had just come in the door when the shooting occurred. After that, on same night, he said : ' Yes, I was in the house ; was sitting in Grant Ogle's lap when the shot was fired.' I had heard nothing about arresting any one at that time. At the court of inquiry he testified that the shot came from the southeast corner of the room. After that and at the preliminary trial, he testified that the shot came from the northwest corner of the room."

James Summers testified that after the inquest he said to

the accused : " Buck, you were mistaken when you said the shot came from the southeast corner of the room.   He said he guessed he was ; that it came from the northwest corner of room, and so testified afterwards."   Many witnesses testified that the shot came from the northwest corner of the room near where the accused was, and one witness, at least, testified that he saw the fire and smoke " close to where Grant Ogle and the defendant were sitting."   The accused had a pistol in his hip pocket at the time Burgess was killed, and several witnesses testify that they saw him immediately after the-shooting with his hand on his hip pocket, and that he said, " Who in the hell shot Tom Burgess ? "   James Dorsett testified that the defendant took hold of the head of the deceased and shook it two or three times, and, prefacing his statement with an oath, said, " take that."   William Hazlett was arrested for the same offence as that charged against the appellant, and while they were both in jail the latter said, as two or three witnesses testify :   " William Hazlett never did the shooting, and never saw the revolver that did it."   Testimony was given by three or four witnesses of a statement by the appellant, that " he had one little racket, and one shot settled it."   And one of these witnesses stated that the appellant afterwards took him, the witness, into an alley, and said, " Don't say anything about it," and asked if he needed any money.   At the time these last conversations took place, the accused had been, as one of the witnesses expressed it, " drinking enough to turn his tongue loose."   The appellant contradicted all of the witnesses who testified as to admissions made by him, and also testified that he did not do the shooting.   He introduced evidence tending to show that the shooting was done by Hazlett, but the evidence upon this point was either explained away or disposed of by contradiction from other witnesses.

The circumstances very satisfactorily establish the fact that the pistol was fired by some one either directly in or very near the position occupied by the appellant, and his admissions and conduct point to him as the person who used the

weapon. The direction which the ball took, and the course it followed into the brain of the deceased, show that it was not discharged while in the pocket of the appellant. It must, therefore, have been discharged while in his hands and in front of him, for it could not otherwise have gone in the direction it did. If the pistol was discharged while in the hands of the appellant, it was justly inferable that he did draw it upon the deceased in a spirit of drunken bravado, and, if he did do this, he was justly condemned. It seems to us that the evidence would have sustained a graver charge against the appellant than that of which he was found guilty, for there is evidence strongly tending to prove that he did the shooting purposely.

Our statutes are intended to require all persons to be exceedingly cautious and careful in the use and handling of firearms, and one who purposely draws upon another a gun or pistol does an unlawful act, and is guilty of felonious homicide if death results from the act, unless, indeed, the act of pointing the weapon is justifiable or excusable upon some legal ground. *Lange* v. *State*, 95 Ind. 114.

Voluntary drunkenness is no excuse for crime. *Goodwin* v. *State*, 96 Ind. 550, and auth. cited. It can not avail the appellant that he did the unlawful act in the spirit of mere drunken bravado. Human life can not be so cheapened as to permit voluntary drunkenness to shield an accused person who, in the commission of an unlawful act, unintentionally takes another's life.

It is clear that the case before us is not one which will justify a departure from the long established rule of this court, never to undertake to determine the credibility of witnesses, or to interfere with the verdict of a jury upon the evidence, except in the plainest and strongest cases of a disregard or misapplication of the evidence by the jury.

Judgment affirmed.

Filed Dec. 17, 1884.