KELLEY *v.* STATE OF INDIANA.

[No 26,180. Filed July 3, 1936.]

*Miller & Causey, Hovey C. Kirk, Robert W. Armstrong, Frank Ely* and *Samuel B. Davis,* for appellant.

*James M. Ogden,* Attorney-General, and *Harry Taylor,* Assistant Attorney-General, for the State.

TREANOR, J.—By an indictment in one count it was charged that the appellant and others did "unlawfully, knowingly and feloniously unite, combine, conspire, con-

federate, and agree to, and with each other for the object and purpose, and with the unlawful and felonious intent then and there unlawfully, feloniously, wilfully and maliciously to prepare, place, arrange, set and distribute, and did then and there unlawfully, and feloniously aid, counsel and procure the preparing, placing, arranging, setting and distributing of a highly explosive substance containing powder and nitro-explosive compound, known as 'Gelamite 2,' upon, against and about the premises and building of James S. Miller, situate about one-quarter of a mile south of Somerville in said County, said building then and there being the dwelling house and residence of the said James S. Miller, with the intent then and there to explode and discharge said explosive substance and unlawfully injure the said property of said James S. Miller, without the consent of said James S. Miller." Appellant received a separate trial and was convicted. He appeals, assigning as error the overruling of his motion for a new trial, which motion contained 149 separately numbered grounds for a new trial. He presents the assigned error in his brief under 84 separate points by which he undertakes to show that a new trial should have been granted for the following reasons:

(1) Error in the admission of evidence.
(2) Misconduct of counsel for the State of Indiana.
(3) Error in giving or refusing to give certain instructions.
(4) That the verdict is contrary to law.
(5) That the verdict is "contrary to the evidence."
(6) Newly discovered evidence.

The giving of instructions numbered 19, 20, 21, 23, 24, 25, 27, 28, 29, 30, 31, and 33 upon the court's own motion is relied upon as error. Those numbered 24, 25, 29, and 30 were correct and were properly given.

The offense charged commonly is designated a conspiracy to commit a felony. The common law criminal conspiracy, which is defined as "a combination of two or more persons, by concerted action, to accomplish some criminal purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means," does not exist in Indiana. The offense in Indiana which corresponds to the common law criminal conspiracy is strictly limited by statute to a uniting or combining of two or more persons for the purpose of committing a felony or felonies.[1] And "an indictment under this section (of the statute) must describe the intended felony with the same certainty and particularity as an indictment for committing such felony." Ewbank's Indiana Criminal Law, §1653, and cases cited, p. 1200, n. 88.) In the instant case the indictment charged as the intended felony the placing of a powerful explosive "upon, against and about the premises and building of James S. Miller . . . with the intent then and there to explode and discharge said explosive substance and unlawfully injure the said property." And in order for the state to make its case it was necessary to prove that the defendant united with another, or others, for the purpose of committing the felony described in the indictment. The defendant could not be convicted lawfully by proof that he had united with one or more persons for the purpose of committing a felony other than the one defined in the indictment no matter how atrocious such other intended felony might be. Under proper circumstances it may be permissible to prove that the defendant is a party to a conspiracy other than the one charged in the indictment; but the facts constituting any felonious uniting other than the one charged in the indictment cannot be substituted for the facts which must be proved in order to establish the felonious uniting

1. §10-1101, Burns' Ind. St. Ann. 1933; §2909, Baldwin's 1934; Acts 1905, ch. 169, §641, p. 584.

which is charged. Evidence that a defendant is a party to a conspiracy other than the one charged in the indictment is admissible only on the ground that participation in such other conspiracy is some evidence of the existence of an essential element of the offense charged.

The state's case was presented at the trial on the assumption that there was a concerted effort on the part of the officers and members of the United Mine Workers of America in District No. 11 to stop the operation of a certain coal mine as a non-union co-operative enterprise. This mine was known as Somerville Mine No. 2 and was situated near the town of Somerville in Gibson County, Indiana. The appellant was a member of the official board of District No. 11. Mr. Miller, upon whose property the explosive substance was placed, was employed in the mine, and the state proceeded upon the theory, and attempted to prove, that the alleged conspiracy to destroy Miller's house was for the purpose of furthering the general undertaking to stop the operation of Somerville Mine No. 2.

It was legitimate for the state to utilize the foregoing assumptions and to build up its case thereon. It was proper to introduce evidence of the existence of the alleged general conspiracy of the appellant and other members of the United Mine Workers of America to force Somerville Mine No. 2 to cease operations as a non-union mine for the purpose of showing a motive for appellant's uniting with others to commit the intended felony as charged in the indictment. But it was essential to the protection of appellant for the jury to clearly understand that proof of appellant's combining or uniting with others to commit an unlawful act, or even a felony other than the one charged in the indictment, would not authorize a conviction. And, as hereinafter will be explained, it was highly important for the jury to understand that the defendant was not being tried on

a charge of conspiracy to cause the closing of Somer-ville Mine No. 2.

We shall first consider the alleged error of the court in giving upon its own motion instructions numbered 19, 20, 21, 23, 27, 28, 31, and 33.

In instruction numbered 19 the trial court called the jury's attention to certain happenings and conversations respecting which conflicting testimony had been given, and which, if they actually took place, tended to show an agreement or undertaking between appellant and others to "blow up," or otherwise destroy Somerville Mine No. 2. The instruction concluded as follows: ". . . it is your duty to consider the evidence touching what, if anything, was said by any of the conspirators, if you find there was a conspiracy, touching the destruction of said mine, together with all the other facts and circumstances, if any, shown by the evidence on that issue."

The foregoing instruction is objectionable because it singles out and calls special attention to parts of the evidence. And since it refers to the so-called "conspiracy touching the destruction" of Somerville Mine No. 2 as an "issue" there is a strong probability that the jury understood that the so-called "conspiracy touching the destruction" of Somerville Mine No. 2 constituted an essential element of the crime charged in the indictment. Yet if the defendant had admitted unqualifiedly that he had been a party to a conspiracy to destroy the mine the fact of his participation in such conspiracy could have been considered by the jury only as evidence bearing on the issue of the defendant's guilt or innocence of the charge of the indictment.

The failure to distinguish between evidence and issue was further emphasized by instruction numbered 20 which contains the following statements:

"If you find from the evidence in this case, beyond a reasonable doubt, that on or about the sixth day of June, 1931, in Gibson County, Indiana, the defendant, Harmon Kelley, unlawfully, knowingly and feloniously united, conspired, confederated and agreed to and with Matthew Bolin, William Foster and other persons named in the indictment in this case, and to and with other persons whose names are alleged to be unknown to the grand jurors, for the object and purpose and with the unlawful and felonious intent, then and there unlawfully, feloniously, wilfully and maliciously to prevent and stop the operation of the mine of the Somerville Coal Corporation, known as Somerville Number Two, by the destruction of the property of the men, or any of them, working at said mine by the use of explosives or other means, or by the infliction of bodily injury upon the men, or any of them, working at said mine, or by any other unlawful means, then if you further find from the evidence, beyond a reasonable doubt, that the said James S. Miller was then secretary-treasurer of the Somerville Coal Corporation, and was one of the men working at said mine, and that on or about the 20th day of September, 1931, some person or persons then a party or parties to such general conspiracy so prepared, placed, arranged, set or distributed such explosive, at the premises and building of the said James S. Miller, all as charged in the indictment herein, then if you further find from the evidence beyond a reasonable doubt, that the defendant, Harmon Kelley, was then a party to such general conspiracy to prevent and stop the operation of such mine, then you are instructed that the defendant, Harmon Kelley, is responsible for the act, if any, of such person or persons, if any, in so preparing, placing, arranging, setting, or distributing such explosive at the premises and building of the said James S. Miller, and is guilty of the crime charged in the indictment."

The foregoing instruction assumes that if the defendant Kelley was a party to a "general conspiracy" to stop the operation of Somerville Mine No. 2 "by the destruction of the property of the men, or any of them, working at said mine by the use of explosives or other

means, or by the infliction of bodily injury upon the men, or any of them, working at said mine, or by any other unlawful means" and if some "person or persons then a party to such general conspiracy" placed the explosives on the premises of James S. Miller, then the appellant was responsible for the act of such person or persons and would be guilty, as a matter of law, of the crime of conspiracy to place the explosives with the "intent then and there to explode and discharge said explosive substance and injure the said property," etc. In short, if the appellant had agreed with one or more persons to stop the operation of mine number 2 by any one of the following methods: (1) by destruction of the property of the men, or any of them, working at the mine, by the use of explosives, or (2) by the infliction of bodily injury upon the men, or any of them, or (3) by any other unlawful means; and if any person who was a party to the general conspiracy in fact did place or set any explosives upon the property of Miller, even without the knowledge or approval of appellant, then appellant was guilty of a conspiracy to destroy or injure Miller's property. The court correctly could have told the jury that the charge of "unlawfully, feloniously, wilfully and maliciously" uniting and combining to place or procure the placing of an explosive "upon, against and about the premises and buildings of James S. Miller," etc., would have been established by proof that the appellant united and combined with another person, or persons, to place or procure the placing of explosives indiscriminately upon the property of any or all of the men employed at Somerville Mine No. 2, with the intent to destroy or injure the property. In that case the series or class of intended felonies would have included the particular felony which is described in the indictment as the intended felony, and the latter would have been within the scope of the common under-

taking. But the instruction tells the jury that the defendant is guilty, as a matter of law, of conspiracy to commit the particular felony of placing explosives upon the premises of Miller with intent to destroy property thereon if the jury should find that appellant was a party to an undertaking to close the mine by unlawful picketing, or any other unlawful act, and if the jury also should find that some party to that general undertaking had placed explosives upon Miller's premises. Obviously the foregoing conclusion could not be true unless the "unlawful means" be so defined as to necessarily include the intended felony described in the indictment.

The prejudicial character of instruction 20 is evident when the evidence relating to the "general conspiracy" is considered. There was testimony from which the jury could have concluded that several hundred members of the United Mine Workers of America, including the defendant Kelley, were parties to a common undertaking to prevent the operation of Mine No. 2 as a non-union enterprise and that unlawful acts were contemplated to accomplish the desired result. There was testimony that the contemplated unlawful acts included blowing up of "the engine and boiler room" of the mine, burning of the buildings at the mine, and threats of personal violence to the workmen. There was also evidence of unlawful interference with workmen by picketers during the short time that members of the union were picketing the mine. In view of the foregoing evidence respecting the so-called "general conspiracy" to close Mine No. 2 instruction 20 was especially prejudicial. If the jurors believed that appellant had united with others to force the closing of Mine No. 2 by any unlawful means, such as threats of personal violence, destruction of the mine or unlawful picketing, then, under instruction 20, the jury was relieved of the necessity of finding that the

appellant in fact ever united or combined with anyone to commit the felony described in the indictment.

> An instruction is fatally defective which directs a jury to return a verdict of guilty upon a finding of facts which may not include the essential facts of the crime charged in the indictment.

If it were a criminal conspiracy in Indiana for union miners to unite or combine for the purpose of stopping the operation of a non-union mine by *any unlawful means*, and if such offense had been charged in the indictment, then instruction 20 would be unobjectionable, since it would not be material what unlawful act should be intended. But under the law of Indiana, as applied to the indictment in this case, an intention to close the mine would furnish only evidence of motive, and the essentials of criminal conspiracy must be found in a combining or uniting for the purpose of committing the intended felony of placing explosives upon the premises of Miller. Even if a member of the so-called general conspiracy placed the explosive upon the premises of Miller such act could not have the retroactive effect of making the members of the "general conspiracy" guilty of the offense of conspiring to place explosives upon the premises of Miller. And if appellant and others did in fact unite or combine for such purpose they were guilty even though no overt act was committed. The fact that gelamite was placed upon the premises of Miller was merely a circumstance for the jury to consider along with all other evidence in determining the guilt or innocence of the defendant Kelley.

Instructions numbered 21 and 31 distinguish between lawful and unlawful conduct of the members of the miners' union in connection with the union's effort to unionize Mine No. 2. These instructions leave no doubt that the words "by any other unlawful means" as used in instruction 20 were intended to include any conduct

of members of the union which was unlawful in the sense of going beyond the standard of peaceable picketing. The statements in instructions 21 and 31 correctly define the standard of conduct which measures the legality of peaceable picketing. But the obvious application for the jury to make of these instructions was to that part of instruction 20 which dealt with the alleged general conspiracy to prevent the operation of Mine No. 2 by "inflicting bodily injury upon the men, or any of them, working at said mine, or by any other unlawful means." When instructions numbered 20, 21, and 31 are considered together the conclusion is irresistible that the jury understood that the defendant Kelley was guilty as a matter of law of conspiring to place explosives upon the premises of Miller if any one person out of a group of several hundred did place an explosive substance thereon, provided the defendant and the person who placed the explosive were members of this large group who were chargeable with conduct which went beyond the limits of peaceable picketing.

In connection with the foregoing it should be observed that the trial court included, as instruction numbered 22, the common law definition of conspiracy. That part of the definition which stated that "a 'conspiracy' is a combination of two or more persons, by concerted action, . . . to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means" aptly described to the jury a general undertaking by the members of the United Mine Workers' Union to stop by unlawful picketing the operation of Mine No. 2 as a non-union co-operative enterprise; such undertaking being a concerted action to accomplish a "purpose not in itself criminal or unlawful, by criminal or unlawful means."

The prejudicial effect of the foregoing instructions was accentuated by instruction numbered 28 which con·

fuses the felonious object, or intended felony, defined in the indictment, with the object of the "general conspiracy" which was said to be "the stopping of the operation of Somerville Mine Number Two." This is indicated by the following excerpt from the instruction:

"The court further instructs you that it is not necessary for the State to prove that the defendants came together and actually agreed in express terms to have the unlawful purpose, and to pursue it by common means. If it has been proven to you, beyond a reasonable doubt, that the defendants in this case, or some of them, including the defendant, Harmon Kelley, pursued by their acts the same object, to-wit, the stopping of the operation of Somerville Mine Number Two, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of the same object, substantially as charged in the indictment herein, then under such circumstances you would be justified in finding that they were engaged in a conspiracy to effect the object."

Evidently the conspiracy which the foregoing refers to is a uniting or combining for the purpose of stopping Somerville Mine No. 2 which was not mentioned in the indictment and which would not be necessarily a criminal conspiracy. Yet the instruction told the jury that the indictment charged that the defendant Harmon Kelley and his co-defendants were pursuing "the same object, to-wit, the stopping of Somerville Mine Number Two"; and further advised the jury that if it was proven "beyond a reasonable doubt" that the defendants were pursuing by their acts this same object then the jury "would be justified in finding that they were engaged in a conspiracy to effect the object." If by "conspiracy to effect the object" the jury understood the court to be referring to the conspiracy actually charged in the indictment, i.e., a combining or uniting for the purpose of placing an explosive substance upon the premises of

Miller, then the jury was misled into believing that proof of the existence of a "general conspiracy" to cause the closing of Mine No. 2, regardless of the nature of the means to be used, would justify, as a matter of law, a finding that those engaged in this general undertaking were also engaged in a conspiracy to place explosives upon the property of Miller. But if the jury understood that by "conspiracy to effect the object" the court was referring to the "conspiracy" to close Somerville Mine No. 2 then the jury had to understand that the court considered the so-called general conspiracy to cause the closing of Somerville Mine No. 2 and the conspiracy actually charged in the indictment to be interchangeable for the purposes of establishing the guilt of the defendant Kelley. We must assume that the jurors were influenced by their understanding of the court's instructions; and to the extent they were influenced by instruction 28 the defendant's interests were prejudiced.

Instruction numbered 27 also fails to give effect to the statutory definition of the offense charged. The instruction enumerates a long list of evidentiary facts which the court treats as ultimate facts. This list includes as one fact the "common undertaking or purpose of stopping the operation of Somerville Mine Number Two" but omits the ultimate facts which constitute the crime charged in the indictment. The danger to the defendant from the instruction was that it encouraged the jury to disregard the necessity of consciously and definitely finding that the defendant united or combined with others to commit the felony charged in the indictment.

Appellant also insists that the giving of instruction No. 23 was prejudicial. This instruction reads as follows:

"The court instructs the jury as a matter of law that all who take part in a conspiracy after it is formed and while it is in exist-

ence, and all who, with the knowledge of the facts, concur in the facts originally formed and aid in executing them, are fellow conspirators. Their concurrence, without proof of an agreement to concur, is conclusive against them. They commit the offense when they become partners to the transaction, or further the original plan."

The first sentence contains the substance of that portion of the statutory definition of the offense which reads as follows:

". . . any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this State, shall, on conviction," etc. (§10-1101, Burns 1933, *supra*, §2909, Baldwin's 1934, *supra*.)

We do not believe that appellant was injured by the first sentence of instruction No. 23. But the second sentence, taken by itself, expresses an erroneous proposition. Evidently the intended meaning of the sentence is that it is not necessary to prove an express agreement to concur if there is proof that the defendant did in fact "concur in the facts originally formed." But whether one becomes a member of a criminal conspiracy by joining it at its formation or by participating in it after it has been formed, it is necessary to show an actual agreement with his alleged co-conspirators to commit the intended felony. Concurrence in a previously formed conspiracy, with knowledge of the facts, would furnish sufficient evidence for the jury to infer an actual agreement; but it is an invasion of the province of the jury for the trial court to tell the jury that concurrence, with or without proof of an agreement to concur, is conclusive. In other instructions it is made clear that there must be an actual agreement, in the sense of a common purpose and understanding, to commit the intended felony when one is charged with being

a member of a conspiracy from the time of its inception. Instruction 23 is objectionable for the reason that the jury could reasonably have understood from the second sentence either that it is not necessary to show an actual agreement when one is charged with criminal conspiracy by reason of participation after the conspiracy has been formed, or that the jury is bound, as a matter of law, to infer the existence of the fact of agreement from the established fact of concurrence.

Appellant predicates error upon the trial court's refusal to give certain instructions which were tendered by him. The substance of these instructions, with the exception of three, Nos. 18, 29, and 44, was included in other instructions which were given by the trial court.

Tendered instruction numbered 18 directed the jury to take the fact that the defendant's reputation for peace and morality had not been discussed in his neighborhood as evidence that he bore a "general good reputation for peace and morality in the vicinities wherein he lived." The court should have given the instruction. The text-writers and decided cases affirm the proposition that evidence of the absence of any discussion of a defendant's reputation in the community in which he lives is a real indication of good reputation even though the evidence is negative in form.[2] Where

2. "The reputation, as just indicated, must involve the general opinion, not a partial or fragmentary one. Nevertheless that opinion may exist as a general one, entertained by the community as a whole, although no utterance by that general mass of its members, or even by a majority of them, has been made. In other words, a general reputation may by inference be believed to exist, although the utterances actually heard by the witness, and used as the basis of his inference, may be and usually are those of a representative minority only. . . .

"Upon the same principle, the absence of utterances unfavorable to a person is sufficient basis for predicating that the general opinion of his is favorable. A witness to *good reputation* may therefore testify by saying that he has *never heard anything said against the person:*

"1865, *R.* v. *Rowton, Leigh & C.,* 520, 535, 536, Erle C. J. 'The best character is that which is the least talked of.' Cockburn, C. J. 'Negative evidence, such as "I never heard anything against the

the defendant has introduced qualified witnesses who have testified favorably to defendant respecting his reputation in the community in which he lives and these same witnesses have testified upon cross-examination that they have not heard his reputation discussed in the community, defendant is entitled to some such instruction as the one offered in order to be protected against a possible inference by the jury that the testimony offered on direct examination has been neutralized by the testimony on cross-examination.

Tendered instruction numbered 44 contained an excellent statement of the issues before the jury and accurately stated the legal relation between the so-called general conspiracy to destroy Mine No. 2 and the conspiracy charged in the indictment. But the instruction included the following language: "... if the State fails to establish ... that the defendant Harmon Kelley had any connection with the placing of the dynamite in the attempt to blow up the residence

---

character of the man" is the most cogent evidence of a man's good character and reputation, because a man's character is not talked about till there is some fault to be found with it. It is the best evidence of his character that he is not talked about at all.'

"1854, Benning J., in *Taylor* v. *Smith*, 16 Ga. 10: 'Certainly the sort of silent respect and consideration by which one is treated and received by those who know him is some index of what they think of him as a man of veracity; and indeed, if he is a person whom they think very highly of, this is about the only index. The character for truth of such a person is never discussed, questioned, "spoken of." To discuss, question, or even perhaps speak of one's reputation for truth, is to admit that two opinions are possible on that point. Suppose the question were, What was the character of Washington among his neighbors for truth? Could the answer be anything but this: "I never heard it questioned, discussed, spoken of; and yet I know it to have been the most exalted.'"

"But it is obvious that this form is no sufficient indication for a reputation of bad character. Moreover, so far as the answer (I never heard his character discussed) implies that the witness has not had opportunities for learning what the reputation was, he is not a qualified witness to reputation." Wigmore on Evidence, 2nd Ed., Vol. III, §§1613, 1614. See also *Davis* v. *Foster* (1879), 68 Ind. 238, 241; *Conrad* v. *State* (1892), 132 Ind. 254, 259, 31 N. E. 805; *Hallowell* v. *Guntle* (1882), 82 Ind. 554, 556; Underhill on Criminal Evidence (4th Ed.), §171; Annotation in 103 Am. St. Rep. 895. In *Hallowell* v. *Guntle, supra,* the court makes it clear that an instruction such as the one asked for in the instant case is not a comment upon the weight of evidence.

of the said Miller, then . . . you cannot find the defendant guilty." It was not error to refuse to give the instruction because the words "had any connection with the placing of the dynamite" might have been understood to mean any actual physical participation in the placing of the dynamite. If so understood the jury would have been misled into considering the commission of the intended felony an element of the criminal conspiracy.

Defendant's tendered instruction No. 29 stated the law correctly, was not covered by any other instruction, and should have been given. It reads as follows:

"The Court further instructs you that in this case, before the declarations or acts of one or more of the co-defendants can bind Harmon Kelley, the evidence must show that there was an agreement, express or implied, between Harmon Kelley and the co-defendants or some one of the co-defendants, to commit the crime as charged in the indictment and further, I instruct you that before you can consider the declarations and acts of any other defendant, and weigh such declarations and acts against the defendant, Harmon Kelley, the evidence must show to your satisfaction that there was an agreement express or implied between Harmon Kelley and another or others of said co-defendants as alleged in the indictment, to commit the particular crime charged in the indictment."

It is elementary in the law of conspiracy that before one can be bound by the acts or declarations of another it must appear that an agreement, express or implied, to commit the offense to which they relate existed between the party sought to be bound by such acts and declarations and the one performing or making them. While the trial court is called upon to pass upon the question as to whether the proof has been sufficient to establish, prima facie, the fact of conspiracy so as to authorize the admission of the acts and declarations of

alleged co-conspirators, it is the duty of the jury to consider such acts and declarations only after having first found that a conspiracy has been formed.

Appellant urges that the trial court erred in admitting testimony of statements of persons who were not charged, or proved, to be co-conspirators of appellant in the felonious uniting charged in the indictment. Most of these statements related to the general undertaking to stop the operation of Mine Number 2. As already stated it was lawful for the state to attempt to show the existence of a general undertaking by appellant and others to stop the operation of the mine in order to establish a motive for the alleged felonious uniting to bomb Miller's residence. Granting the existence of such general undertaking and that appellant and others were shown to be parties thereto, the declarations and acts of the parties which were made in pursuance of their common understanding and to further the undertaking were binding upon the appellant, but only in respect to his relation to this general undertaking to stop the operation of Mine Number 2. Declarations of picketers that they intended to stop Mine No. 2 by use of personal violence to workmen could not go to the jury as evidence of appellant's participation in a conspiracy to blow up Miller's house, even though it be conceded that the picketers were acting with the approval and encouragement of appellant. But the fact of appellant's participation in a general undertaking to close Mine No. 2 having been established, this fact is competent evidence of the existence of a motive for the formation of the conspiracy charged in the indictment. It follows that if appellant was injured by evidence of the type just discussed it was because its application was not properly restricted. It would have been error for the trial court to have refused an instruction, if tendered by appellant, limiting the application of such evi-

dence; but it was not error to admit the testimony since it was competent for the purpose pointed out.

Among many specific instances of alleged error in admission of evidence was the court's action in permitting witness Terrell to answer the following question over the objection of the defendant:

Q. "Who walked up to who?"

A. "Adolph Lambert walked up to Virgil May, he said What made you—Lambert wanted to know of Virgil May, why, what is the reason you didn't pull that job, he said; 'you ain't yellow-legged are you?' he said, 'no,' he said 'I believe in organization Lambert, but,' he said, 'When you have to go that far I am not in on it.'"

The testimony of May and others clearly discloses that the "job" referred to in the foregoing testimony was the destruction or crippling of Somerville Mine No. 2. Consequently evidence of the declarations or statements of Lambert could not be admitted on the ground that they were made in pursuance of the conspiracy charged in the indictment, or in furtherance of its object. Furthermore the record does not show that Lambert was charged as a co-defendant of Kelley and there is no evidence that he participated in the conspiracy charged in the indictment. But since there is some evidence that Lambert and Kelley were both engaged in the undertaking to stop Somerville Mine No. 2 by acts other than the intended felony named in the indictment, the evidence of Terrell as to statements and declarations of Lambert relating to the destruction and crippling of Somerville Mine No. 2 were admissible for the reasons above stated.

Appellant insists that it was error for the trial court not to withdraw submission of the cause and to discharge the jury in view of alleged misconduct of the state's attorneys. The conduct consisted of remarks in the presence of the jury, several al-

legedly improper questions, and a statement in course of argument to the jury. No one of the acts complained of was serious enough to justify our holding that the trial court abused its discretion in refusing to withdraw submission of the cause. The trial court, after sustaining the defendant's objection to the most prejudicial question admonished the jury to disregard the prejudicial testimonial matter with which the question was loaded. But we cannot escape the conviction that the defendant's cause was seriously prejudiced by the cumulative effect of improper questions and remarks by state's attorneys, culminating in the statement of the state's attorney during his closing argument to the jury. The statement was as follows:

"That in the event the defendant is convicted he may then appeal his case to the Supreme Court of Indiana and under a law recently enacted he would be permitted to be out on bond during that appeal and that in the event he was convicted that he would bring Judge Pigg down here and others, and ask this court to suspend his sentence and the court had a right to suspend such a sentence."

We must assume that the purpose of the statement was to minimize in the minds of the jurors the seriousness of a verdict of guilty. The defendant's just interests demanded that the jurors recognize their full and final responsibility; and any statement by counsel for the state which tended to weaken this sense of responsibility was improper and, presumably, harmful. This court, speaking through Judge Martin, in the case of *Davis* v. *State*[3] commented as follows upon a similar statement by the state's attorney (p. 110):

"To urge the jury to convict the defendant and tell them that if the trial court believed a mistake had been made it would grant a new trial, and that if the trial court did not, the defendant had the right to appeal to the Supreme Court which could reverse the case if it believed an error had been

3. *Davis* v. *State* (1928), 200 Ind. 88, 161 N. E. 375.

made and that after the Supreme Court had acted, the defendant had a right to appeal to the Governor for a pardon or reprieve, transcends the bounds of proper argument and is calculated to induce the jury to disregard their responsibility. *State* v. *Kring* (1877), 64 Mo. 591. These remarks may have been made in the excitement of argument by the eminent counsel who assisted the prosecuting attorney, without any intention of improperly influencing the jury in this case, but they were improper, and we deem it necessary to observe their impropriety because of the modern tendency to shift responsibility to reviewing tribunals. It should be constantly borne in mind that the function of courts of appeal is not to try cases *de novo* on the facts. Appeals are expensive, consume much time, are often unavailable and can be taken in but a small percentage of cases. It is therefore of paramount importance that all cases be tried in the *nisi prius* courts just as ably and as carefully as if no right of appeal existed, and an efficient and just administration of the law cannot be had unless there is a realization and acceptance of their complete responsibility by courts, juries and counsel in the trial courts."

In the instant case the defendant promptly moved the court to admonish the jury to disregard the remarks of the state's attorney and not to consider them in determining the guilt or innocence of the defendant. This motion was overruled and this ruling of the court necessarily resulted in the jury's understanding that it was proper to give effect to implications of the remarks in determining its verdict.

As one of his grounds for a new trial appellant relied upon newly discovered evidence in the form of confessions by Matthew Bolin and Thomas Sharp, who claim that they alone planned and perpetrated the felony of placing explosives upon the premises of Miller. Since the judgment must be reversed with directions to the trial court to grant a new trial it is not necessary to consider whether the trial court erred in holding that the newly discovered evidence was not sufficient to re-

quire the granting of the motion for a new trial. Upon a new trial the appellant will have the benefit of the competent evidence furnished by these confessions.

In order to assist the trial court upon a new trial, we include the following summary of a part of the preceding discussion:

1. The trial court properly admitted testimony relating to the activities of Kelley and others associated with him which tended to show a plan to cause the closing of Somerville Mine No. 2. This was vital to the State's case since it alone indicated any motive on the part of Kelley to engage in a conspiracy to place explosives upon the premises of Miller.

2. It was proper to admit testimony tending to show that appellant Kelley was a party to agreements to cause the closing of Mine No. 2 by committing particular felonies, or any unlawful acts, other than the felony described in the indictment, for the purpose of showing that the conspiracy charged in the indictment was merely one of a series of criminal undertakings to further the general plan of stopping the operation of Somerville Mine No. 2.

3. The objection to instructions Nos. 19, 20, 21, 28, and 31, as we construe them, is that the jury reasonably could have understood that it was not necessary to find that appellant Kelley in fact did actually unite or combine with anyone to commit the particular felony described in the indictment as distinguished from other felonies or unlawful acts referred to in instruction No. 20.

For the reasons stated we hold that the trial court erred in overruling appellant's motion for a new trial. Judgment of the Gibson Circuit Court is reversed with instructions to sustain defendant's motion for a new trial and for further proceedings not inconsistent with this opinion.