DOBBS *v.* STATE OF INDIANA.

[No. 29,451.   Filed June 10, 1957.   Rehearing denied
September 11, 1957.]

*Lawrence D. Renfro, Eugene H. Yergin,* both of New Castle, *Clarence E. Benadum* and *J. Robert Long* (of counsel), both of Muncie, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Robert M. O'Mahoney,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was indicted for murder in the first degree, tried by jury, found guilty of murder in the second degree, and sentenced to the Indiana State Prison for life.

Two questions are presented for our consideration.

*First:* Appellant asserts that the trial court erred in excluding, on motion of the State, the testimony of two witnesses as to the general reputation of defendant-appellant for peace and quietude in the community in which he lived.

Eight other witnesses testified that the reputation of the defendant-appellant for peace and quietude in the community where he lived was good. The testimony of the two witnesses which was stricken out by the court on motion of the State was merely cumulative on the fact of appellant's general reputation for peace and quietude.

It has long been the law in this State that the number of witnesses who may be called to prove a single issue of fact is within the sound discretion of the trial court and, while such discretion may be reviewed, the exclusion of such evidence will not constitute reversible error unless a clear abuse of discretion is shown. *Chappel* v. *State* (1926), 197 Ind. 272, 276, 150 N. E. 769; *Butler* v. *The State* (1884), 97 Ind. 378. See also: 21 A. L. R. Anno. 1(a), p. 335; 48 A. L. R. Anno. 1(a), p. 948.

Professor Wigmore in §1908, p. 580, Vol. 6, 3d ed., Wigmore on Evidence, states the rule as follows:

> "The value of *character-evidence,* impeaching or sustaining a party or a witness, is commonly much exaggerated (*ante,* §§920, 1611). Its comparative futility in the ordinary case, and its tendency to degenerate into a mere exhibition of petty local jealousies and animosities, of no real probative service, have induced the Courts to concede unanimously that the number of character-witnesses may without disadvantage be limited, as the trial Court may prescribe."

Even if the testimony of the two witnesses was admissible, the action of the trial court in sustaining the motion to strike was not reversible error under the rule as stated in 24 C. J. S., Criminal Law, §1918, p. 1000, as follows:

> "No prejudicial error results from the erroneous exclusion of admissible evidence, where the facts sought to be proved thereby are clearly established by other evidence admitted before or after the erroneous exclusion."

Under the circumstances as shown by the record herein, where the evidence as to appellant's good reputation as given by eight witnesses is uncontradicted, we cannot say that appellant was injured by the exclusion of similar testimony of two additional witnesses. *Hengstler* v. *State* (1934), 207 Ind. 28, 37, 189 N. E. 623; 23 C. J. S., Criminal Law, §1041, p. 428, §1042, p. 429.

It has also been held in a number of jurisdictions "that the trial court, in the exercise of a reasonable discretion, may stop the further introduction of cumulative testimony when it is satisfied that the point in dispute has been thoroughly pre-

sented, and that further testimony on the point will be of no assistance in arriving at a conclusion as to the truth." 21 A. L. R., Anno. p. 349.

The State introduced no evidence as to appellant's reputation. Hence, the testimony of eight witnesses as to his good reputation went to the jury undisputed and unchallenged. Under these circumstances there was no abuse of discretion in striking out the testimony of the ninth and tenth witnesses and thus limiting the number of witnesses on this fact. *Sanders* v. *State* (1940), 216 Ind. 663, 666, 25 N. E. 2d 995.

*Second:* Appellant further asserts that the verdict of the jury is contrary to law because (1) the evidence was insufficient to show that the killing was maliciously done, and (2) defendant-appellant was intoxicated at the time the crime was committed to such an extent that he was incapable of forming the intent necessary to commit murder in the second degree.

(1) Appellant admits that "It is true there is some evidence to the effect that appellant fired the fatal shot." When arrested some three hours after the shooting appellant told the police officers where he threw the gun and went with them and pointed out the spot where the gun containing one empty shell and five loaded ones was found. Appellant admitted to the police that he had shot the victim.

From the evidence as it appears in the Bill of Exceptions the jury could reasonably have concluded that a deadly weapon was used by appellant in such a manner as likely to cause death, and from this malice could have been inferred. *Haley* v. *State* (1956), 235 Ind. 333, 133 N. E. 2d 565, 566.

(2) Drunkenness is no excuse for the commission of a crime. *Booher* v. *State* (1901), 156 Ind. 435, 440, 60 N. E. 156, 54 L. R. A. 391.

The intoxication of a person on trial on a criminal charge which involves a specific actual intent, may be admitted and considered in his behalf. However, it is not admissible "upon the ground that it of itself excuses or palliates the crime, but is admitted and considered only for the purpose of ascertaining the condition of the mind of the accused, in order to determine whether he was incapable of entertaining the specific intent charged, where such intent, under the law, is an essential ingredient of the particular crime alleged to have been committed; . . . In all criminal cases where the intent of the accused is an essential element, such intent becomes a question of fact to be determined by the jury or court trying the case upon a consideration of all the evidence." *Booher* v. *State, supra* (1901), 156 Ind. 435, 446, 60 N. E. 156, 54 L. R. A. 391.

The specific intent of appellant herein to commit the crime charged in the indictment was an essential element of the offense, and the existence or non-existence of such malicious intent was a condition of fact to be determined by the jury from all of the evidence. *Booher* v. *State, supra,* at pp. 448, 449 of 156 Ind.; *Aszman* v. *The State* (1890), 123 Ind. 347, 24 N. E. 123, 8 L. R. A. 33.

An intent to kill might properly have been inferred from the circumstances of the case or from the use of the gun by appellant in such a manner as to be reasonably calculated to cause death. *Larkin* v. *State* (1904), 163 Ind. 375, 71 N. E. 959; *Walker* v. *State* (1894), 136 Ind. 663, 669, 36 N. E. 356.

In our opinion there was sufficient evidence from which the essential element of felonious intent might have been inferred. The burden was upon appellant to show reversible error. This he has failed to do.

Finding no reversible error the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C. J., Landis and Achor, JJ., concur.

Emmert, J., dissents with opinion.

<h3 style="text-align:center">DISSENTING OPINION</h3>

EMMERT, J.—I believe it was reversible error to strike out all the testimony of two witnesses for the appellant that his reputation for peace and quietude was good before the crime charged. In order to fully understand what was presented, the material parts of the testimony of the witness Fairchild, the State's objection, and the court's ruling thereon should be examined.

"MR. BENADUM:

"Q. Would you state now that you are generally acquainted with the reputation of the defendant in the community where he lived and resided, for peace and quietude?

A. I would say yes.

Q. You may state whether that reputation was good or bad.

A. I would say it was the best."

" 'CROSS EXAMINATION BY MR. HALL:

Q. I take it then you have known him quite a while?

A. Yes.

Q. And you regard him as a friend of yours?

A. Yes, I have known him quite well and he is a good friend.

Q. Before this incident did you ever hear any conversation by anybody concerning his reputation for peace and quietude?

A. Before this incident?

Q. Yes.

A. You don't hear too much about anybody, but everybody seemed to like him.

Q. Answer that question yes or no.

A. Yes.

Q. What was the occasion of your having heard that?

A. He was just a quiet man.

Q. What was the occasion, where were you when you heard somebody talking about his reputation for peace and quietude?

A. I am sorry, I am talking about after the incident.

Q. Before this incident?

A. No, not before.

Q. Did you ever hear any body talk about his reputation before this incident?

A. No, I had no reason to.

'The State moves to strike out the testimony of this witness as being improper. The witness has given his personal and private opinion as to the reputation of the defendant, rather than general reputation.' "

THE COURT:

" 'Motion granted and the testimony of this witness is stricken from the record and the jury instructed to disregard the same.' "

The witness Jean Gladys Carpenter also testified that appellant's reputation for peace and quietude was good, but that she never heard any discussion of appellant's reputation prior to the incident. A similar motion to strike was made, which was granted by the court with instructions to the jury to disregard it.

Eight other witnesses testified appellant's reputation

for peace and quietude was good. Of these, the witnesses Rucker and Watkins both stated they had never talked to anybody about his reputation for peace and quietude before the incident.

Evidence of a defendant's good character is always admissible when he is charged with crime. *Kistler* v. *State* (1876), 54 Ind. 400. This has been the established practice since before 1800. 1 Wigmore, Evidence (3rd Ed.), §56, p. 451. "The current rule is that good character must be considered in all cases if proved to the satisfaction of the jury." Underhill, Criminal Evidence (3rd Ed.), §138, p. 177. When an accused is charged with murder his reputation for peace and quietude is relevant. *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 21 N. E. 460. It may tend to disprove premeditation or malice, or both, as well as any criminal intent to do the act charged.[1]

The fact that a reputation witness may testify he never heard the defendant's character or reputation discussed is a real indication of good reputation. *Kelley* v. *State* (1936), 210 Ind. 380, 396, 397, 3 N. E. 2d 65. The fact the defendant's reputation was never discussed is "often of the highest value." Underhill, Criminal Evidence (3rd Ed.), §140, p. 181. See also 5 Wigmore, Evidence (3rd Ed.), §1614, p. 484. Reputation is something intangible, it cannot be seen, and often is not heard, yet the law recognizes its existence, its value, often beyond price, and affords protection for injury thereto.[2] The two witnesses were fully qualified and

1. "But, after all, so far as in criminal cases the criminal intent remains in issue, the good character of the defendant may be regarded as always relevant to disprove it; and the better way seems to admit it." 1 Wigmore, Evidence (3rd Ed.), §56, pp. 453, 454.

2. "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. . . ." Section 12, Article 1, Ind. Const.

competent to state in their opinion appellant's reputation for peace and quietude was good, and it was prejudicial error for the court to sustain the improper objections made by the State, and to strike out their testimony and instruct the jury to disregard the same.

This is not a case where the court made a reasonable limitation on the number of reputation witnesses to be used by either or both parties. It is error to exclude evidence when there has been no limitation made as to the number of witnesses on the issue. *State ex rel. Steigerwald* v. *Thomas* (1887), 111 Ind. 515, 518, 13 N. E. 35. Moreover, the instructions to the jury cast discredit upon the weight and credibility to be given the testimony of the witnesses Rucker and Watkins, who both testified they had never heard anyone speak of the accused's reputation. It violated his constitutional right to have the jury adjudge the facts under §19 of Article I of the Constitution. These oral instructions to the jury were just as prejudicial as giving an erroneous instruction at the conclusion of all the evidence, which could only be cured by withdrawing it. *Beneks* v. *State* (1935), 208 Ind. 317, 196 N. E. 73.

In *Kelley* v. *State* (1936), 210 Ind. 380, 396, 397, 3 N. E. 2d 65, *supra*, this court, in an opinion by Judge Treanor, held it was reversible error to refuse defendant's requested instruction number 18, which "directed the jury to take the fact that the defendant's reputation for peace and morality had not been discussed in his neighborhood as evidence that he bore a 'general good reputation for peace and morality in the vicinities wherein he lived.'" It was just as much reversible error in the appeal at bar to strike out and instruct the jury to disregard the testimony of the witnesses Fairchild and Carpenter. The ruling affected the credibility to

be given four witnesses for appellant on a material issue.

Nor is this a case where the reputation sought to be proved was clearly established by other evidence, or was undisputed and unchallenged. No doubt the prosecuting attorney will be quite surprised to learn that he did not dispute appellant's reputation for peace and quietude. Although in rebuttal he did not introduce reputation witnesses that appellant's reputation was bad, his cross-examination was vigorous, and in every manner possible sought to place discredit upon the testimony of appellant's reputation witnesses. Appeals here should not be determined by this court speculating on what the jury may have considered clearly established by disputed evidence.

Nor should this court take the position it is free to disregard material error in exclusion of evidence if the facts are otherwise established. Since 1935 it has been settled that §9-2320 refers only to matters of practice and procedure which do not go to the merits of the case. *Beneks* v. *State* (1935), 208 Ind. 317, 329, 196 N. E. 73, *supra*.[3] Any other rule does not make for equal

---

3. "It is true that the statute provides that, 'in consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant.' Section 2394, Burns' 1926, §9-2320, Burns' 1933, §2384, Baldwin's 1934. This statute must be construed as having preference only to matters of practice and procedure, and to questions which do not go to the merits of the case. It was not intended to authorize this court to weigh the evidence and determine therefrom whether the jury would have reached the same verdict under proper instruction. A defendant is entitled to have the jury correctly instructed concerning the law. Any expression in the decisions which would seem to indicate that this court will consider the evidence in determining whether an erroneous instruction, involving the merits of the case, prejudiced the substantial rights of the defendant must be disregarded." *Beneks* v. *State* (1935), 208 Ind. 317, 329, 196 N. E. 73.

justice under the law, and makes liberty depend upon courts of men and not of law.

I would reverse the judgment.

NOTE.—Reported in 143 N. E. 2d 99.