MINTON *v*. STATE OF INDIANA

[No. 30,400. Filed January 16, 1964.]

*William C. Erbecker*, of Indianapolis, for appellant.

*Edwin K. Steers*, Attorney General, and *David S. Wedding*, Deputy Attorney General for appellee.

ARTERBURN, J.—The appellant was charged by indictment with involuntary manslaughter under Acts 1941, Ch. 148, §2, pp. 447, 448, being §10-3405, Burns' Ann. St. (1956 Repl.). He was tried by the court and found guilty as charged and sentenced to the Indiana State Prison for a period of not less than two (2) nor more than twenty-one (21) years. The appellant assigns as error the overruling of his motion for a new trial and specifically, that the finding of the court is contrary to law and is not sustained by sufficient evidence.

This requires a brief review of the evidence most favorable to the state. *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537; *Myles* v. *State* (1955), 234 Ind. 129, 124 N. E. 205.

The evidence shows that the appellant was forty-seven (47) years old; that the decedent had been living with him in the same home some time prior to February 23, 1961, the date of the alleged crime; that the appellant had put the decedent out of the house after an argument, and when the de-

cedent returned and attempted to re-enter the house, the appellant got a 12 gauge shotgun and shot the decedent. A police officer stated that when he arrived he found the decedent's body inside a fenced enclosure near the rear steps of appellant's house, and that appellant stated he had had an argument with the decedent and shot him. At that time the appellant was under the influence of alcohol. A physician testified following an autopsy that decedent had died as a result of a shotgun wound. A ballistics expert testifed that the pattern of the shots showed that the gun was fired at approximately 3 to 6 feet from the victim.

Some suggestion is made in the argument that the corpus delicti was not proved. Such a position is without merit in this case. We have said:

> "A dead body alone is not proof of the corpus delicti in a homicide case; but an identified dead body with marks of violence thereon or surrounding circumstances that would indicate the deceased did not die from natural causes establishes prima facie that a homicide has been committed and the corpus delicti." *Brown* v. *State* (1958), 239 Ind. 184, 190, 154 N. E. 2d 720, 722.

It is next contended that there is not sufficient proof of criminal intent of the appellant to sustain the charge of involuntary manslaughter because of the appellant's intoxication. Drunkenness is no defense to the crime of involuntary manslaughter, since specific intent is not embraced within the crime. *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N. E. 2d 99; *Aszman* v. *The State* (1890), 123 Ind. 347, 24 N. E. 123; 8 L. R. A. 33.

It is only necessary that the killing be done in the commission of an unlawful act. The unlawful act in this case was the pointing of a loaded gun and the discharging of same at the decedent. The court had a right to believe that the **appellant**

knew the person whom he was shooting. The shooting took place at close range. The appellant and decedent had been living together. His features were familiar to the appellant. There is no evidence of any mistaken identity.

Where the evidence is conflicting upon any point, the trial court's finding must be affirmed by ■ this court. *Lander* v. *State* (1959), 238 Ind. 680, 154 N. E. 2d 507.

A judgment will not be reversed for insufficiency of evidence unless there is a total lack thereof to support an essential element of the offense. *Arrington* v. ■ *State* (1952), 230 Ind. 384, 103 N. E. 2d 210; *Pendleton* v. *State* (1959), 239 Ind. 341, 156 N. E. 2d 782.

The evidence is uncontradicted that the unlawful act of pointing and discharging the shotgun at the decedent was the proximate cause of the death. In ■ doing so, appellant violated Acts 1905, Ch. 169, §452, p. 688, being §10-4708, Burns' Ann. St. (1956 Repl.) regarding the aiming of firearms.

"Our statutes are intended to require all persons to be exceedingly cautious and careful in the use and handling of firearms, and one who purposely draws upon another a gun or pistol does an unlawful act, and is guilty of felonious homicide if death results from the act, unless, indeed, the act of pointing the weapon is justifiable or excusable upon some legal ground. *Lange* v. *State*, 95 Ind. 114.

"Voluntary drunkenness is no excuse for crime. *Goodwin* v. *State*, 96 Ind. 550 and auth. cited. It can not avail the appellant that he did the unlawful act in the spirit of mere drunken bravado. Human life can not be so cheapened as to permit voluntary drunkenness to shield an accused person who, in the commission of an unlawful act, unintentionally takes another's life.

."It is clear that the case before us is not one which will justify a departure from the long established rule of this court, never to undertake to determine the credibility of witnesses, or to interfere with the verdict of a jury upon the evidence, except in the plainest and strongest cases of a disregard or misapplication of the evidence by the jury." *Surber* v. *The State* (1884), 99 Ind. 71, 76.

For the reasons stated, we find no error, and the judgment is affirmed.[1]

Landis, C. J., and Achor and Myers, JJ., concur; Jackson, J., dissents with opinion.

(1) The dissenting opinion of Judge Jackson says that the majority opinion indicates that the decedent was put out of the house of the appellant on the same day as the homicide and that "the undisputed evidence" shows that the ejectment and argument occurred "a day or so prior to the homicide." The majority opinion does not so state. The fact is that the evidence is somewhat confused upon that point and it is not decisive for us on appeal, but rather a matter to be weighed by the triers of the fact.

Direct examination by the appellee's attorney reveals the following:

"Q. You stated earlier that the Defendant said that he had had an argument with Cline earlier that day.

"A. Yes, sir. He stated that it was either yesterday or the day before, that he had put Minton, or put Cline out of the house, had an argument with him and put him out of the house."

In earlier examination the same witness said:

". . . He stated to me that Cline had been put out of the house after an argument, but he stated that it was either yesterday or the day before that he had come back to attempt to get in, that he had attempted to break in the back door and . . . he got the shotgun and shot him."

Officer Dehn made the following statement: .

"Our investigation showed that Mr. Minton, along with the Mr. Olinger and Mr. Cline, had been drinking since approximately 10:00 a.m. on the morning of the shooting, and that up to approximately three or four o'clock that day they had consumed approximately three fifths of whiskey, that an argument had ensued between Mr. Minton and Mr. Cline that morning during this drinking bout over the property that Mr. Minton owed."

Whether or not the argument happened the same day as the homicide is somewhat confused and is not "undisputed evidence."

The dissenting opinion further states that there are "glaring errors" in that a police officer referred to the gun used in the

## Dissenting Opinion

JACKSON, J.—I disagree with the conclusion reached by the majority opinion and dissent thereto. The statement of facts contained in the majority opinion ignores evidence of probative value that requires consideration not for the purpose of weighing evidence, but to ascertain whether or not the finding of the court is sustained by sufficient evidence and whether or not it is contrary to law.

The majority opinion indicates that appellant put decedent out of the house after an argument the day of the homicide; that later that evening decedent returned to appellant's home and tried to get back in the house whereupon appellant shot and killed decedent. The un-

---

homicide as a "Twelve gauge Browning automatic rifle." This minor misstatement by the police officer is not even mentioned in any of the briefs or raised on appeal. The appellant himself time after time referred to the "shotgun" that he used in the killing. For example, in his direct examination by his own attorney, we find the following:

"Q. Yes. Then what did you do?

"A. Well, I got the shotgun then.

"Q. Yes. Why did you get the shotgun?

"A. Well, I was going to stop them from going in, whoever it was."

Appellant in his own brief states:

"That Appellant shot decedent has never been in issue, either in the trial Court or before this Honorable Court. More than six months prior to the trial the Appellant made a recorded statement to the police, which disclosed, without equivocation, that the Appellant shot the decedent."

We do not search the transcript on appeal for minor errors not raised in the briefs.

The dissenting opinion also states "according to the uncontradicted evidence in the record," that the appellant "never saw or identified" the decedent until after he had warned him twice to leave. Yet the evidence, even by the appellant himself, says that he shot him at a distance of 3 to 6 feet—a man he well knew, and unarmed. In his statement to the police officer he undoubtedly knew who it was, since he said he had come back after the argument in an attempt to get in.

These are all matters for the finders of the fact—the jury or judge in the trial court to determine—it is not for a judge of this court to weigh the evidence.

disputed evidence on that question is that the argument referred to and the ejectment of decedent from appellant's house occurred a day or so prior to the homicide, that on the day of the homicide appellant, decedent and one Don Olinger were in appellant's home, Olinger and decedent drinking, appellant not. Decedent left the home of appellant between 3:30 and 4:00 to go to the home of his sister intending to and stating he would return to appellant's home the first of the month to pick up his mail. Later in the night after appellant and Olinger had gone to bed and apparently about 11:00 p.m. a person who later turned out to be the decedent broke into appellant's home. Appellant, according to the uncontradicted evidence in the record, never saw or identified such person until after having twice warned the intruder to leave, and. being confronted with continued intrusion into his home, he fired the shotgun. The intruder fell outside the house and appellant later learned that he had shot decedent.

Under the circumstances disclosed by the record before us, there was a total failure on the part of the State to prove in its case in chief the defendant's [appellant's] guilt beyond a reasonable doubt, and the refusal of the court to sustain the motion to discharge at the conclusion of the State's evidence before introduction of evidence on behalf of defendant constitutes reversible error. *Lindley* v. *State* (1929), 201 Ind. 165, 166 N. E. 661; *Dorak* v. *State* (1915), 183 Ind. 622, 624, 109 N. E. 771; *Fritz* v. *State* (1912), 178 Ind. 463, 466 99 N. E. 727; *Osborn* v. *State* (1904), 164 Ind. 262, 271, 73 N. E. 601; *Howard* v. *State* (1897), 50 Ind. 190.

Other glaring errors are apparent from the record. These will be touched on only briefly without discussion. A fatal variance exists in the introduction of

State's exhibit No. 10 as the weapon causing death, it is described, in the testimony of the police officers, as a "twelve gauge Browning automatic rifle" and is so admitted in evidence. The evidence is that decedent died of a shotgun wound. The defense of self-defense was established by the State itself, was corroborated by the defendant's testimony, and is nowhere in the record contradicted or impeached, in fact proof thereof was adduced by the State in its case in chief. It is not contradicted that appellant was in a place where he had a right to be, he was entitled to defend himself and his property, and the decedent, under the existing circumstances, was a trespassing, violent intruder in the night time.

Finally, the majority opinion errs in concluding that "[t]he unlawful act in this case was the pointing of a loaded gun and the discharging of same at the decedent. The court had a right to believe that the appellant knew the person whom he was shooting." There is no evidence whatever in the record to sustain either conclusion, on the contrary the uncontradicted evidence is that the pointing and firing of the gun was not unlawful and that appellant did not know the person who was shot and the trial court had no right to indulge in any such inference, presumption or belief. All presumptions must be indulged in favor of the innocence of the defendant and not otherwise. The evidence is uncontradicted and unimpeached that appellant saw only the hand or arm of decedent and never saw his face or body to determine who the intruder was, the only evidence in the record is that the identity of decedent was unknown until after the shooting.

The judgment of the trial court should be reversed and cause remanded for a new trial.

NOTE.—Reported in 195 N. E. 2d 355.