AUTO–OWNERS INSURANCE
COMPANY, Appellant–
Defendant,

v.

Jon HARVEY and Misty Johnson, as
Co–Personal Representatives of the
Estate of Brandy Nicole Harvey, Ap-
pellees–Plaintiffs,

and

Toby Michael Gearheart, Appellee–
Co–Defendant.

No. 83A01–0309–CV–343.

Court of Appeals of Indiana.

Aug. 20, 2004.

David L. Taylor, Thomas R. Haley, III, Joseph A. Samreta, Jennings Taylor Wheeler & Bouwkamp, Carmel, IN, Attorneys for Appellant.

James O. McDonald, Everett, Everett & McDonald, Terre Haute, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant Auto–Owners Insurance Company (Auto–Owners) appeals the denial of its motion for summary judgment in its case against appellees-plaintiffs Jon Harvey and Misty Johnson, the co-personal representatives for the estate of Brandy Nicole Harvey (Brandy). Though Auto–Owners raises five issues for appeal, we need only address one: was there an "occurrence" upon which to predicate liability coverage under the insurance policy? We hold that there was not and, thus, reverse the trial court and remand with instructions to enter summary judgment in favor of Auto–Owners.

## FACTS

The facts most favorable to Harvey and Johnson—the non-moving parties—reveal that on August 1, 2001, Brandy and Toby Gearheart met through mutual friends in Cayuga, Indiana. They met once again on August 15, 2001, while visiting with a group of friends at a laundromat in Cayuga. At about 11:30 p.m., Brandy asked Gearheart for a ride. The pair ended up at the Lodi Boat Ramp on the Wabash River.

At the boat ramp, Brandy and Gearheart "started making out," and then they "started having sexual contact intercourse." Appellant's App. p. 170. After a matter of minutes, however, Brandy told Gearheart to stop and nudged his shoulder. Both Brandy and Gearheart stood up. At this point, the couple was about seven feet from the water, and Gearheart's back was to the side of the boat ramp, where rocks were piled. To Gearheart's right was the launch where boats could be backed into the water. Brandy "pushed [Gearheart] once and she pushed [Gearheart] twice, and then when she [attempted to push Gearheart] again, [he] turned around" and "pushed her and she went into the water." Appellant's App. p. 175. Gearheart "heard a little bit of splashing" but could not see Brandy in the water. Appellant's App. p. 180. Gearheart did not enter the water because he could not swim. Gearheart dressed and threw Brandy's clothing into the water because he "was scared" and because he was attempting to "cover [his] tracks." Appellant's App. p. 182. As a result of the incident, Brandy drowned, and her body was found several days later.

On June 10, 2002, Gearheart pleaded guilty to involuntary manslaughter, a class C felony. Thereafter, on July 9, 2002, the trial court accepted Gearheart's guilty plea, entered judgment against him, and ordered him to serve eight years in the Department of Correction.

On July 25, 2002, Harvey and Johnson filed a wrongful death action against Gearheart, alleging that Gearheart's "negligence and recklessness" had caused Brandy's death. Appellee's App. p. 1. Thereafter, on October 31, 2002, Harvey and Johnson filed a declaratory action against Auto–Owners, claiming that an Auto–Owners homeowner's insurance policy purchased by Gearheart's parents "obligate[d] Auto Owners Insurance Company to pay any judgment which may be entered" against Gearheart. Appellant's App. p. 14.

On May 5, 2003, Auto–Owners filed a motion for summary judgment wherein it

argued that no genuine issue of material fact remained for trial and that it was entitled to judgment as a matter of law. Specifically, Auto–Owners contended that because Gearheart *intentionally* pushed—as demonstrated by his conviction—Brandy into the water, there was no coverage under the insurance policy because there was not an "occurrence," defined by the policy as "an accident." Appellant's App. p. 104. Auto–Owners noted that public policy was served by such a requirement in the insurance policy to avoid a situation wherein insurance coverage would be provided to an intentional tortfeasor.

Harvey and Johnson, in opposing Auto–Owners' motion for summary judgment, noted that Indiana law required that for an event to be intentional, a tortfeasor had to have committed an act "although he was consciously aware that the harm caused by his actions was practically certain to occur." Appellant's App. p. 394. Harvey and Johnson claimed that genuine issues of material fact remained as to whether Gearheart was consciously aware of the harm that his actions would cause and whether Gearheart's intellect was so diminished as to prevent him from understanding that his act of pushing Brandy would cause her injury.

On July 11, 2003, the trial court denied Auto–Owners' motion for summary judgment, finding only that "there is a material question of fact such that the Defendant, Auto–Owners Insurance Company is not entitled to judgment as a matter of law." Appellant's App. p. 699. On August 8, 2003, Auto–Owners petitioned the trial court to certify its ruling for interlocutory appeal, and the trial court granted Auto–Owners's request on August 18, 2003. We accepted jurisdiction over this cause on September 6, 2003, and Auto–Owners filed its notice of appeal on October 20, 2003.

## DISCUSSION AND DECISION

### I. Standard of Review

Initially, we note that the party appealing from "a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous." *Severson v. Bd. of Tr. of Purdue Univ.*, 777 N.E.2d 1181, 1188 (Ind.Ct.App.2002). Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party." *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001).

Additionally, we have held that insurance policies "are subject to the same rules of construction as are other contracts; construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Jackson v. Jones*, 804 N.E.2d 155 (Ind.Ct.App.2004). "Summary judgment based on an insurance contract is a legal determination that the contract is unambiguous and that the rules of contract construction need not be employed to ascertain the contract's meaning." *Id.* If an insurance policy is unambiguous, it must be enforced per its terms. *Id.* An insurance policy will be considered ambiguous only if a reading of the contract could lead reasonable people to differ as to the meaning of its terms. *Id.* Finally, while insurers are free to limit coverage, "exceptions, limitations, and exclusions must be plainly expressed." *Id.*

### II. Occurrence

Auto–Owners claims that its policy does not provide coverage for Gearheart in

this case because of the absence of an "occurrence," defined in the policy as "an accident." Auto–Owners notes that Gearheart pleaded guilty to involuntary manslaughter, a crime requiring an intentional act as a predicate offense. Accordingly, Auto–Owners claims, "an accident" could not have occurred because Gearheart acted intentionally.

■ The insurance policy issued by Auto–Owners provides personal liability protection for an insured if "bodily injury or property damage [is] caused by an occurrence to which this coverage applies." Appellant's App. p. 33. The "DEFINITIONS" section of the policy specifically defines "occurrence" as "an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful conditions." Appellant's App. p. 22. We have defined an "accident" as "an unexpected happening without an intention or design." *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind.Ct.App.1993). Accordingly, a key question in this case is whether Gearheart acted in such a manner as to preclude a finding that Brandy's death was brought about "without an intention or design." *Id.*

### III.  Gearheart's Mental State

■ Auto–Owners reasons that because Gearheart pleaded guilty to involuntary manslaughter-with battery as the predicate offense-Gearheart's mens rea has been judicially established. Our involuntary manslaughter statute, Indiana Code section 35–42–1–4(c) reads:

A person who kills another human being while committing or attempting to commit:

(1) a Class C or Class D felony that inherently poses a risk of serious bodily injury;

(2) a Class A misdemeanor that inherently poses a risk of serious bodily injury; or (3) battery;

commits involuntary manslaughter, a Class C felony.

Thus, involuntary manslaughter is not a specific intent crime, as the defendant need not intend to kill the victim. *Minton v. State*, 244 Ind. 636, 638, 195 N.E.2d 355, 356 (1964). The intent that must be shown is the intent required by the predicate offense. *McEwen v. State*, 695 N.E.2d 79, 86 (Ind.1998). The evidence presented in this case sounds in battery, and our battery statute states that a defendant commits battery if he "knowingly or intentionally *touches* another person in a rude, insolent, or angry manner." Ind. Code § 35–42–2–1 (emphasis added). Indiana Code section 35–41–2–2 states that a person acts "intentionally" if, when "he engages in the conduct, it is his conscious objective to do so."

When pleading guilty to involuntary manslaughter, Gearheart specifically admitted to the proposition that he "knowingly or intentionally," *id.*, touched Brandy inasmuch as the plea agreement expressly stated that he "acknowledges that entry of a guilty plea pursuant to this Agreement constitutes an admission of the truth of all facts alleged in the charge or charges." Appellant's App. p. 159.

■ Here, despite Gearheart's guilty plea, Harvey and Johnson claim that the matter of Gearheart's mental state at the time of the crime is a question of fact for trial. Specifically, Harvey and Johnson claim that because Gearheart may not have pushed Brandy "with an intent to injure her," a question of fact exists as to whether Gearheart's actions constituted "an accident." Harvey and Johnson note

that "Toby was not angry with Brandy." Appellee's Br. p. 3. Furthermore, they assert, Gearheart "did not intend for Brandy to be injured." Appellee's Br. p. 3. Harvey and Johnson's arguments notwithstanding, we note that the trial court—when accepting Gearheart's guilty plea—found a factual basis for Gearheart's admission of guilt, necessarily including a factual basis that Gearheart *knowingly or intentionally* touched Brandy. The underlying crime of battery did not necessitate an intent to injure but only an intent to *touch* "in a rude, insolent, or angry manner." I.C. § 35–42–2–1.

Our system of justice has established—by Gearheart's own admission—that he knowingly or intentionally committed the crime with which he was charged. Thus, when he pushed Brandy, "it [was] his conscious objective to do so." I.C. § 35–41–2–2. Were we to permit Harvey and Johnson to re-open the issue of Gearheart's mens rea, we would be allowing Harvey and Johnson to attempt to make a perjurer out of Gearheart because a finding of *negligence* would necessarily negate the mens rea Gearheart admitted to in his plea agreement. Moreover, Gearheart himself—during his deposition—admitted that he acted intentionally:

[Attorney Taylor]: Okay. And you made a decision at that point that you were going to push her before she pushed you?

[Gearheart]: Yes.

. . .

[Attorney Taylor]: You just wanted to push her to get her physically away from you?

[Gearheart]: Yes.

. . .

[Attorney Taylor]: Did you intend to push Brandy Nicole Harvey to make her stop pushing you?

[Gearheart]: Yes.

Appellant's App. p. 180, 184.

Given the trial court's acceptance of Gearheart's guilty plea and Gearheart's own deposition testimony, there is no question of material fact but that Gearheart acted intentionally or knowingly in pushing Brandy. Accordingly, it is not reasonable to conclude that Brandy's battery and subsequent death was an "accident" inasmuch as we have defined that term as "an unexpected happening without an intention or design," *Pacific Employers Ins. Co.*, 634 N.E.2d at 1338. Because the uncontroverted evidence demonstrated that Gearheart intentionally or knowingly pushed Brandy, the trial court erred in declining to enter summary judgment in favor of Auto–Owners.

### IV. Public Policy

We would be remiss if we failed to mention the ramifications of Harvey and Johnson's arguments. A consequence of Harvey and Johnson's claims is the abandonment of the rationale that "a person should not be permitted to insure against harms he may intentionally and unlawfully cause others, and thereby acquire a license to engage in such activity." *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 451, 332 N.E.2d 240, 244 (1975). Gearheart's case is particularly applicable inasmuch as he *admitted* that he intentionally battered Brandy.

Finally, we note that the factual basis of this case is unlike others wherein an intentional, unlawful act leads to liability on the part of a third party. In *Foshee v. Shoney's, Inc.*, our supreme court allowed an injured employee to sue her employer after she had been physically attacked by a criminal because Foshee claimed that Shoney's was negligent in placing Foshee in a situation where harm was foreseeable. 637 N.E.2d 1277, 1279 (Ind.1994). Here, there has been no allegation that Gearh-

eart's parents—the policyholders—engaged in any sort of behavior that posed a harm to Brandy.

### CONCLUSION

In light of the issues discussed, we conclude that there is no genuine issue of material fact as to Gearheart's mental state inasmuch as Gearheart pleaded guilty to involuntary manslaughter, a predicate offense of which was battery. Because, then, there was no question that Gearheart committed the act that led to Brandy's death knowingly or intentionally, summary judgment should have been entered in favor of Auto–Owners.

The judgment of the trial court is reversed, and this cause is remanded with instructions that summary judgment be entered in favor of Auto–Owners.

FRIEDLANDER, J., and BAILEY, J., concur.