## SHONFELD V. STATE OF INDIANA.

[No. 27,550.   Filed April 6, 1942.]

*Wildermuth & Force, Ora L. Wildermuth,* and *Russell H. Nehrig,* all of Gary, for appellant.

*George N. Beamer,* Attorney General, *C. Ballard Harrison,* Deputy Attorney General, *Felix A. Kaul* and *Harry Long,* both of Gary, and *Ben Schwartz,* of East Chicago, for appellee.

SWAIM, J.—This is an appeal from a conviction on both counts of an indictment, the first count of which charged the appellant, jointly with one Mary Grace Wells Schaaf, with having unlawfully and feloniously counseled, encouraged and procured Sylvia Beiriger, a notary public, to feloniously and falsely certify, as such notary public, that the appellant had subscribed his name and was sworn by her to a certain affidavit which was affixed to and formed a part of a claim filed by the appellant with the said Mary Grace Wells Schaaf, as

trustee of Calumet Township, in Lake County, Indiana, whereas said appellant did not subscribe his name to said affidavit and was not sworn thereto.

The second count of the indictment charged the appellant and said trustee with having unlawfully and feloniously united, conspired, combined, confederated and agreed to and with each other and to and with said notary and òne Mary Youhay for the unlawful and felonious purpose and with the felonious intent to have the said notary public feloniously and falsely certify that the appellant had been sworn by and before said notary to the said affidavit, whereas said affidavit had not been subscribed and sworn to by said appellant.

The court overruled the separate motions of the appellant to quash each count of the indictment and also overruled the appellant's motion for a new trial.

The appellant contends that the trial court erred in overruling the motions to quash each count of the indictment; that both counts of the indictment were bad in that they set out the affidavit in question and failed to show that the notary public affixed her seal to the jurat; that the affidavit was, therefore, void; and that consequently there could have been no crime in the doing of a void official act.

With this last contention we cannot agree. Section 10-3602, Burns' 1933, § 2638, Baldwin's, 1934, provides that: "whoever, being a notary public . . ., certifies that any person has sworn or affirmed before him to any affidavit . . ., when, in fact, such person was not so sworn or affirmed, shall, on conviction, be imprisoned in the state prison not less than one (1) year nor more than three (3) years, and fined not less than ten dollars ($10.00) nor more than one thousand dollars ($1,000)." We do not believe

that a notary public should escape the consequences of intentionally and knowingly making a false certificate by neglecting to affix a seal, nor do we believe that by a fair interpretation of the statute such a result can be reached. Certainly as to the second count of the indictment, which charged a conspiracy to commit the crime, it could not be argued that the failure of the notary public to complete the official act by affixing a seal could be used as a defense by those who had conspired to have the notary make a false certificate.

The appellant also contends that the first count of the indictment was insufficient in that it failed to allege the commission of the offense by the principal. It alleged that the appellant and another "did then and there unlawfully and feloniously counsel, encourage, and *procure* said Sylvia Beiriger, as such Notary Public" to make the false certificate. (Our italics.) Webster's New International Dictionary defines one meaning of the word "procure" as, "To bring about by contrivance; to effect; to cause." This was a sufficient allegation that the crime was committed:

We are also of the opinion that Count II of the indictment sufficiently alleged a conspiracy for the purpose and with the object of committing a felony.

The question of the sufficiency of the evidence to sustain the verdict presents a more serious problem.

The appellant owned and operated a general drygoods and clothing store in which he employed twelve to fourteen clerks; a bookkeeper, Mary Youhay; and a store-manager, Louis Rosene. Mary Youhay had worked for the appellant for eleven years. She had charge of the office, kept the books, checked out the

cash daily, balanced the bank statements and did the general office work. She had authority to sign the appellant's name to letters and checks. Mary Grace Wells Schaaf, who was indicted jointly with the appellant, was the Township Trustee of Calumet Township, in Lake County, Indiana, where the appellant's store was located. She, as Township Trustee, issued orders to indigents authorizing them to buy certain goods in the appellant's store. When such goods were delivered to the indigent he signed a receipt therefor on the order, and on the basis of these receipted orders, claims for the payment of the goods so delivered were prepared and filed with the Trustee. Mary Youhay prepared these claims for the appellant. They were prepared on forms provided therefor by the Trustee's office and there was attached to the claim form, as a part thereof, a form of affidavit and jurat for the verification of the claim. After the claims were prepared they were taken to the Trustee's office where they were checked and the jurat filled in by Sylvia Beiriger, a claim clerk and notary public employed by the Trustee.

The following is a copy of the affidavit and jurat on which the indictment is predicated. The capitalized words show those placed on the affidavit and jurat in green ink by the notary public; the italicized words were subscribed to the affidavit by the bookkeeper, Mary Youhay, in purple ink:

"State of Indiana, Lake County:

"I, JACK SHONFELD of GARY Indiana vocation STORE MANAGER, swear that the foregoing bill in the sum of $9381.82 is true and correct; that the said Township has received the full value and the exact consideration therein named; that the prices therein charged are in accordance with contract or statute; that the said bill or any part thereof has not been paid or commuted, and that

neither bonus, commission nor any other consideration has been given or promised within my knowledge or belief, because of the proposed exchange of values therein set forth, or for any other reason.

*Jacks Dept Store*
*Jack Shonfeld*
*M Youhay*

Subscribed and sworn to before me, this 22ND day of FEBRUARY 1938.

SYLVIA BEIRIGER

My commission expires SEPT. 23, 1941."

It is admitted that Jack Shonfeld neither subscribed nor swore to this affidavit.

Both counts of the indictment are based on the theory that the notary public falsely attested that the appellant subscribed and swore to the affidavit when he had not done so. Two questions are presented by the convictions under this indictment: (1) did the notary public, by the execution of the jurat to this affidavit and by so filling in the blank spaces in the affidavit, intend to falsely certify that the appellant had subscribed and sworn to the affidavit; and (2) if the notary public intentionally made such a false certificate, did the appellant in any manner cause or procure her to make such false certificate, or conspire with others to cause her to make such false certificate.

The appellant's bookkeeper, Mary Youhay, prepared the claims from the receipted poor relief orders in the appellant's office. There was no conflict in the evidence as to the fact that she was familiar with the details shown by the claims and that the appellant was not.

Section 52-173, Burns' 1933 (Supp.), § 13320-30, Baldwin's Supp. 1935, provides that the claims against the township "itemized and sworn to as provided by law, and accompanied by the original township poor

relief order . . . shall then be filed with the county auditor for payment." Section 26-538, Burns' 1933, § 5403, Baldwin's 1934, provides that a claim filed with the county auditor shall be "fully itemized and its correctness verified by the claimant, *or some one in his behalf,* . . ." (Our italics.)

When Mary Youhay started to work for the appellant he had told her "to make out the poor relief claims and told me to sign them Jack's Department Store and by him and myself." Neither she nor any other witness had any independent recollection as to the particular claim and affidavit in question, but apparently pursuant to her original instructions and as authorized by the statute she did make out the itemized claim and, to the affidavit attached thereto, signed the appellant's trade name, his individual name and then her own name, thereby indicating that his signature had been subscribed by her. After the claim was prepared and the affidavit so signed by Mary Youhay, Louis Rosene delivered it to Sylvia Beiriger, one of the claim clerks in the trustee's office, who was also a notary public.

Mary Youhay testified that she did not think the appellant ever saw the claim in question; that once in a while he "took a look at a claim" but that generally he did not examine the claims after she made them up.

Sylvia Beiriger testified that when she first started working in the trustee's office she worked as a typist; that later she became a claim clerk and, still later, at the request of Mrs. Schaaf, the trustee, she qualified as a notary public; that her work was to check claims and notarize them; that in 1936, she called Mary Youhay at Jack's Department Store and was told by Mary Youhay that it was all right to notarize the claims in the manner that they were signed, i. e. Jack's Dept. Store, Jack Shonfeld, Mary Youhay; that Mr.

Shonfeld had instructed Mary Youhay to sign the claims in this manner; that later she had further conversations with Mary Youhay about notarizing claims; and that these conversations continued until she "knew her (Mary Youhay's) signature."

She further testified that the trustee had told her she "could verify signatures by telephone"; that no one ever told her what her duties were as a notary; that she never "read the law about the duties of a notary public or what they should do or how"; that she did not know "what it meant to swear to a thing"; that when she received the claim and affidavit in question the signature was affixed thereto; that she knew that the signature was not in the writing of Jack Shonfeld; that at the time she filled in and signed the jurat on these affidavits she also filled in the name "Jack Shonfeld" and the word "Gary" and the words "Store Manager" in the body of the affidavit; that she never asked Miss Youhay to hold up her right hand and be sworn that the affidavit was true, but only asked Mary Youhay if that was her signature and if she (Sylvia Beiriger) should notarize it; that after she came to know Mary Youhay's signature she would sometimes not even call her on the telephone to verify it.

The appellant testified that he had authorized Miss Youhay to certify and verify these claims on his behalf; that he had never discussed, with Mrs. Schaaf, the subject of having the claims sworn to; that he never discussed that subject, at any time, with Miss Beiriger, the notary; and that he never, in any manner, indicated to her nor to any one else that he wanted her to certify that he had signed and sworn to the claims when he had not.

There was also testimony by Evelyn Harms, a notary public in another trustee's office, to the effect that the

claims of Jack Shonfeld filed in that office had been notarized in a manner similar to the claim in question.

A field examiner for the State Board of Accounts testified that he and another examiner had examined the disbursements made to Jack Shonfeld from the poor relief fund for said township. There was no intimation that they had discovered any overpayments or any claims filed for amounts which were too large.

No question was raised as to the amount of this claim. No one intimated that the goods for which the claim was filed had not been delivered to the proper persons pursuant to the order of the township trustee.

The evidence showed that the preparation and the checking of the claims and the execution and verification of the affidavits attached thereto had been left largely to the two girls, Mary Youhay and Sylvia Beiriger; that in checking the claims an occasional discrepancy was found which they discussed and rectified by telephone.

The jurat in question only said "subscribed and sworn to before me, this 22nd. day of February, 1938." It did not name the person who had "subscribed and sworn." These three names signed to the affidavit, Jack's Dept Store, Jack Shonfeld and M. Youhay, were all in the same handwriting—the handwriting of Mary Youhay. Sylvia Beiriger knew that all of the names were written by Mary Youhay. The position of the names and the fact that all were in the same handwriting would indicate this fact to any one else examining the signature. Since the signature itself indicates who "subscribed" the affidavit and the notary knew it was subscribed by Mary Youhay, we must infer that the notary public only intended to certify that it was Mary Youhay who subscribed and was sworn to the

affidavit. *Miller* v. *Miller* (1914), 55 Ind. App. 644, 104 N. E. 588.

In discussing the validity of an affidavit, from the body of which the name of the affiant had been omitted, although the affiant had subscribed his name thereto and the notary certified that the affidavit was subscribed and sworn to before him on a certain day, the Court of Appeals of New York, in *People ex rel. Kenyon* v. *Sutherland* (1880), 81 New York Reports 1, 8, said:

> "The paper, by the signature it bore, identified the person of the deponent. The *jurat* was ample; it declared that the subscription was made before the officer, and that could mean nothing other than the making of the signature of the name borne upon the paper; it declared that it was sworn to as well as subscribed before the officer, and that could mean nothing other than it was sworn to by the person who made that signature."

So in this case if the blank space in the affidavit for the affiant's name had not been filled in by the notary to read "Jack Shonfeld" there would be no serious question but that the jurat only certified that the affidavit had been subscribed and sworn to by Mary Youhay. In *Torrans* v. *Hicks* (1875), 32 Mich. 307, in discussing an affidavit which was signed by Charles H. Lee, but began with the recital, "Fred B. Lee, of said county, being duly sworn" etc., Mr. Justice Cooley, speaking for the court said:—

> "We think, however, that the recital of the name of Fred B. Lee, in the beginning of the affidavit is apparently a clerical error, and to be overlooked as such. Charles H. Lee makes the oath, and had the name been omitted in the beginning, there would have been no difficulty in holding that the affiant was applying the facts recited to himself. But this affidavit is in legal effect the same, we think, that it would have been if in the body of it there had been no recital of any name as that of an affiant."

While the name of Mary Youhay should have been placed in the body of the affidavit as the affiant, and while the signature subscribed to the affidavit should not have included either the trade name or the individual name of the appellant, even though it was his claim, the correctness of which was being verified by Mary Youhay on behalf of the appellant, the legal import of the jurat is that the affidavit was subscribed and sworn to by Mary Youhay. An examination of the evidence indicates very clearly that at the time this affidavit was made, none of the parties involved understood the legal meaning of the jurat or how an oath should be administered. Since the affidavit was on the claim of Jack Shonfeld, it was apparently assumed by the notary, and possibly by the others, that his name should be written in the affidavit in the blank space provided for the name of the affiant. From this affidavit and jurat, however, it cannot be reasonably inferred that Sylvia Beiriger, the notary, intended to, or did, certify that the appellant subscribed and swore to the affidavit. Therefore, since she, as principal, was not guilty of the crime charged, the conviction of the appellant for having "counseled, encouraged and procured" her to falsely certify "that said Jack Shonfeld had subscribed his name and was sworn by her" to said affidavit cannot be sustained. *Murphy v. State* (1915), 184 Ind. 15, 110 N. E. 198.

Nor is there sufficient evidence to sustain the conviction of the appellant on the second count of the indictment which charged conspiracy between the appellant, his bookkeeper, the trustee, and the notary public. There is a total lack of evidence to show a deliberate agreement among the persons named to cause the notary public to falsely certify that the appellant had subscribed and sworn to the

affidavit. To sustain a conviction on this count there must be evidence from which an agreement between at least two persons named in the indictment may be legally inferred. Conspiracy cannot be established by mere suspicion. *Johnson* v. *State* (1935), 208 Ind. 89, 194 N. E. 619. Also, as said by this court in *Kelley* v. *State* (1936), 210 Ind. 380, 385, 3. N. E. (2d) 65:

> "And in order for the state to make its case it was necessary to prove that the defendant united with another, or others, for the purpose of committing the felony described in the indictment. The defendant could not be convicted lawfully by proof that he had united with one or more persons for the purpose of committing a felony other than the one defined in the indictment no matter how atrocious such other intended felony might be."

In Ewbank's Indiana Criminal Law, § 1653, p. 1200, it is stated that an indictment for a conspiracy to commit a felony "must describe the intended felony with the same certainty and particularity as an indictment for committing such felony."

Here the indictment charged that the conspiracy was to have the notary falsely certify that the appellant, Jack Shonfeld, had subscribed and sworn to the affidavit. A conviction could not be sustained on this count by evidence from which an inference might be drawn that there was a conspiracy to have the notary falsely certify that Mary Youhay had subscribed and sworn to the affidavit.

We find no evidence in this record to sustain the charge that the appellant entered into any conspiracy or agreement, with any of the parties named in the indictment, to have the notary public falsely certify that he, the appellant, had subscribed and sworn to the affidavit. His testimony was that he had never discussed the verification of these affidavits

with Mrs. Schaaf, the trustee. She did not testify. The mere fact that he had had conversations with the trustee would not justify an inference that they entered into an unlawful conspiracy. He gave his bookkeeper, Mary Youhay, general instructions on the preparation of the claim and the execution of the affidavit attached thereto, but there is no intimation that he even suggested to her that she should induce the notary public to certify that he, Jack Shonfeld, had subscribed and sworn to the affidavit. His instructions that Mary Youhay should sign her own name underneath his name would negative any intention on his part that the notary should make a jurat certifying that he had subscribed and sworn to the affidavit. He testified that he had never discussed with Sylvia Beiriger, the notary, the verification of these claims. In answer to a question as to whether Jack Shonfeld ever told her "to notarize any claims in that fashion as set out in said Exhibit I" (the affidavit in question), Sylvia Beiriger answered: "I think he did but I am not sure about that." This is the only testimony as to any conversation she ever had with the appellant. From this vague, ambiguous answer there could be no reasonable inference of an agreement that she should falsely certify that Shonfeld subscribed and swore to the affidavit. All of the surrounding circumstances, as shown by undisputed evidence, negative any intention on the part of the apellant to have the notary make such a false certificate. We see no possible motive which the appellant might have for wanting the notary to falsely certify that he had subscribed and sworn to the affidavit. The affidavit verified a true and correct claim against the poor relief funds of the township, a claim which had been prepared by his bookkeeper who was familiar with the facts therein contained. It was perfectly proper and

legal for her to verify it on his behalf. By failing to personally subscribe and swear to the affidavit on this claim the appellant avoided no civil or criminal liability. In view of these facts could it reasonably be inferred that the appellant would intentionally induce the notary to make a false certificate or would conspire with others to induce 'her to make such a certificate? We do not think so. According to the undisputed evidence, all of the parties to this transaction knew that the affidavit was signed by Mary Youhay. None of them apparently knew just what it meant to be sworn to an affidavit until they appeared before the Grand Jury in connection with this case. Until that time none of them apparently realized that there was anything wrong with the manner in which these claims were being verified. None of them intended that the notary should certify, nor thought that she was certifying, that the appellant had subscribed and sworn to the affidavit in question. We find no basis in the evidence for an inference that the appellant induced, or conspired with others to induce, Sylvia Beiriger to commit a felony by falsely certifying that the appellant had subscribed and sworn to the affidavit.

The judgment is reversed with instructions to the trial court to grant the motion for a new trial.

NOTE.—Reported in 40 N. E. (2d) 700.