## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2018, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stevonta D. Hill,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 11, 2018

Court of Appeals Case No.
79A02-1709-CR-2196

Appeal from the Tippecanoe
Circuit Court

The Honorable Thomas H. Busch,
Judge

Trial Court Cause No.
79C01-1609-F3-35

**Bailey, Judge.**

# Case Summary

Stevonta Hill ("Hill") appeals his convictions for Count I, Conspiracy to Commit Robbery as a Level 3 felony;[1] Count XVIII, Use of a Firearm in Commission of an Offense;[2] and his sentence enhancement.

We affirm in part and reverse in part.

# Issues

Hill raises the following two issues on appeal:

I. Whether the trial court abused its discretion when it refused to give Hill's proffered jury instruction on conspiracy.

II. Whether the trial court erred when it enhanced Hill's sentence pursuant to the firearms enhancement statute.

# Facts and Procedural History

In 2014, Charles Hunter III ("Hunter") conceived of a plan to rob the Industrial Federal Credit Union ("the bank") located on Meijer Drive in Lafayette, and Hill, Michael Mitchell ("Mitchell"), and Ronnie Creed ("Creed") subsequently agreed to rob the bank with Hunter. On August 4, 2014, Hunter borrowed a

---

[1] Ind. Code §§ 35-41-5-2(a) (2014) and 35-42-5-1 (2014).

[2] I.C. § 35-50-2-11.

Hyundai automobile from Hill's sister, Tahtyana Bagsby ("Bagsby"). At approximately 9:20 a.m. that same day, Hill, Hunter, Mitchell, and Creed entered the bank wearing dark clothing, masks, and gloves, and they demanded money from the bank employees. One of the men hit teller Maria Olivio ("Olivio") on the back of her head with a handgun, causing her to "black out a little bit" and suffer a concussion. Tr. Vol. II at 85. Both Hill and Creed possessed firearms during the robbery. The bank employees gave the four men approximately $35,350 in cash and a dye pack with tear gas and red dye that looked like $1,000 in $20 bills.

[5] As the four men drove away from the bank, the dye pack exploded in the car and someone threw one of the bags of stolen money out of the vehicle. Hunter attempted to clean the red dye off the inside of the Hyundai but was not completely successful. He then returned the vehicle to Bagsby.

[6] The Lafayette Police Department ("LPD") obtained still photographs from a surveillance video of the robbery and distributed them to LPD personnel. One of the LPD officers recognized Hunter in one of the still photos, and he was aware of Hunter's associates, including Hill. On August 14, 2014, patrol officer Alvin Cudworth ("Officer Cudworth") of the LPD was on duty and received a request to conduct a traffic stop of a vehicle suspected of having false plates and of being involved in the bank robbery. Officer Cudworth stopped the vehicle, which was Bagsby's Hyundai. Hill was the driver. After discovering that the plates on the Hyundai were for a different vehicle, the LPD impounded the vehicle and obtained a search warrant. During the search of the vehicle, the

LPD took samples of pink-stained carpet from the vehicle and sent the samples to the Indiana State Police laboratory. Testing of the carpet samples revealed that the chemical on the stained carpet matched the chemical in the dye pack from the August 4 bank robbery.

[7] On August 9, 2016, Hill testified before a grand jury under a grant of use immunity. Hill denied involvement in the bank robbery and testified that he had not seen either Mitchell or Hunter on the morning of August 4, 2014. Hill further testified that he did not recognize any of the individuals depicted in the bank security video and denied knowledge of how the dye stains got into his sister's Hyundai. On September 17, 2016, the grand jury returned an indictment charging Hill with nineteen counts: conspiracy to commit robbery, as a Level 3 felony; robbery, as a Level 3 felony;[3] criminal confinement, as a Level 3 felony;[4] criminal confinement, as a Level 5 felony;[5] robbery, as a Level 5 felony;[6] theft, as a Level 6 felony;[7] criminal confinement, as a Level 6 felony;[8] two counts of intimidation, as Level 6 felonies;[9] carrying a handgun without a

---

[3] I.C. § 35-42-5-1(a).

[4] I.C. § 35-42-3-3(a) and (b)(2).

[5] I.C. § 35-42-3-3(a) and (b)(1).

[6] I.C. § 35-42-5-1(a)(1).

[7] I.C. § 35-43-4-2(a)(1).

[8] I.C. § 35-42-3-3(a).

[9] I.C. § 35-45-2-1(a) and (b)(1).

license, as a Class A misdemeanor;[10] obstruction of justice, as a Level 6 felony;[11] battery by means of a deadly weapon, as a Level 5 felony;[12] battery resulting in moderate bodily injury, as a Level 6 felony;[13] criminal recklessness while armed with a deadly weapon, as a Level 6 felony;[14] pointing a firearm, as a Level 6 felony;[15] perjury, a Level 6 felony;[16] pointing a firearm, as a Class A misdemeanor;[17] intimidation, as a Class A misdemeanor;[18] and use of a firearm during the commission of an offense.  Prior to trial, the court dismissed the misdemeanor intimidation charge.

[8]     Hill's trial proceeded in two phases.  The first phase was tried to a jury from July 31, 2017 to August 2, 2017 and consisted of all charges except the firearm sentencing enhancement and the perjury charge.  In the second phase, the latter charges were tried to the bench following Hill's jury waiver as to those two charges.  At the close of evidence, the court dismissed Count XIV, pointing a firearm as a Level 6 felony, per the State's request.

---

[10]  I.C. § 35-47-2-1(a)(e).

[11]  I.C. § 35-44.1-2-2(a)(3).

[12]  I.C. § 35-42-2-1(b) and (f)(2).

[13]  I.C. § 35-42-2-1(b) and (d)(1).

[14]  I.C. § 35-42-2-2(a) and (b)(1)(A).

[15]  I.C. § 35-47-4-3(b).

[16]  I.C. § 35-44.1-2-1(a)(1).

[17]  I.C. § 35-47-4-3(b).

[18]  I.C. § 35-45-2-1(a).

[9] At trial, Hill requested that the court include one of the following two instructions on conspiracy:

> (1) Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties do not show a conspiracy. *Johnson v. State*, 1933, 208 Ind. 89, 95, 194 N.E. 619; *Kelley v. State*, 1936, 210 Ind. 380, 385, 3 N.E.2d 65; *Weer v. State*, 1941, 219 Ind. 217, 232, 36 N.E.2d 787, 37 N.E.2d 537; *Shonfeld v. State*, 1942, 219 Ind. 654, 666, 667, 40 N.E. 700; *Eacock v. State*, 1907, 169 Ind. 488, 502, 82 N.E. 1039; § 10-1101, Burns' 1942 Replacement, supra.

> *Coughlin v. State*, 228 Ind. 393, 395, 92 N.E.2d 718, 719 (1950)

> (2) Conspiracies cannot be established by mere suspicion, nor does evidence of mere relationship between parties or association show "conspiracy," but there must be evidence to prove agreement directly or such state of facts that agreement may be legally inferred, though agreement need not be proved by direct evidence.

> *Johnson v. State*, 208 Ind. 89, 194 N.E. 619 (1935)

Appellant's App. at 58-59. The trial court denied Hill's two proposed instructions on conspiracy because the content of those instructions was already contained in other jury instructions.

[10] The jury found Hill guilty on all charges, and the trial court found Hill guilty of perjury and unlawful use of a firearm as an enhancement. On August 28, 2017, the trial court held a sentencing hearing. Due to double jeopardy concerns, the

trial court entered a judgment of conviction only on Count I, Conspiracy to Commit Robbery as a Level 3 felony; Count II, Robbery as a Level 3 felony; Count XVI, Carrying a Handgun without a License as a Class A misdemeanor; Count XVII, Obstruction of Justice as a Level 6 felony; Count XVIII, Use of Firearm in Commission of an Offense; and Count XIX, Perjury, a Level 6 felony. The court merged the remaining charges into Count II, the robbery conviction.

[11] The court sentenced Hill to twelve years imprisonment on Count I; twelve years on Count II; one year on Count XVI; two and a half years on Count XVII; and one and a half years on Count XIX. The court ordered the sentences on Counts I, II, and XVI to be served concurrent with one another. It ordered the sentences on Counts XVII and XIX to be served concurrent to one another but consecutive to the sentences on Counts I, II and XVI. The trial court enhanced the sentence on Count II by an additional term of five years based on the sentencing enhancement in Count XVIII. Hill's total sentence is nineteen and a half years to be executed in the Indiana Department of Correction. This appeal ensued.

# Discussion and Decision

## Jury Instructions on Conspiracy Charge

[12] Hill appeals the trial court's denial of his proposed jury instructions on the conspiracy to commit robbery charge.

Upon review of a trial court's decision to give or refuse a jury instruction, we apply an abuse of discretion standard. *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010) (internal citation omitted). "[T]his Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002) (internal citation omitted). Reversal arises "only if the appellant demonstrates that the instruction error prejudices his substantial rights." *Treadway*, 924 N.E.2d at 636 (internal citation omitted).

*Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). Moreover, "[w]e consider jury instructions as a whole and in reference to each other and do not reverse the trial court … unless the instructions as a whole mislead the jury as to the law in the case." *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013) (quotation and citation omitted), *trans. denied*.

[13]    The substance of Hill's proposed jury instructions was contained in other final jury instructions the trial court gave—specifically, Court's Instruction No.

3.5700;[19] Court's Instruction No. 2.1600;[20] Court's Instruction No. 9.0120;[21] and Court's Instruction No. 12.0100.[22]  So it is not surprising that Hill has failed to demonstrate how he was in any way prejudiced by the trial court's refusal to

<hr />

[19] This instruction stated, in relevant part:

> A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. The State must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.
>
> ***
>
> Count I
>
> Before you may convict the Defendant of Conspiracy to Commit Robbery [as] a Level 5 felony, as charged in Count I, the State must have proved each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant
>
> 2. agreed with other persons, Charles D. Hunter III, Michael A. Mitchell, and/ or unknown others, to commit the crime of Robbery
>
> 3. with the intent to commit the crime, and
>
> 4. Defendant and the other persons, Charles D. Hunter III, Michael A. Mitchell, and/or unknown others performed an overt act in furtherance of the agreement …
>
> ***
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of the crime of Conspiracy to Commit Robbery, a Level 5 felony, charged in Count I.
>
> If the State proved elements 1, 2, 3, and 4 beyond a reasonable doubt and the State further proved beyond a reasonable doubt that
>
> > a. a deadly weapon, to wit: a handgun, was used in the robbery or
> >
> > b. the robbery resulted in bodily injury to any person other than a conspirator,
>
> you may find the Defendant guilty of Conspiracy to Commit Robbery, a Level 3 felony, charged in Count I.

Appellant's App. at 36.

[20] This instruction stated, in relevant part:  "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense."  *Id.* at 48.

[21] This instruction explained the meaning of the terms "intentionally" and "knowingly."  *Id.*

[22] This instruction explained the meaning of the terms "direct evidence" and "circumstantial evidence" and gave examples of each term.  *Id.* at 52.

give his proposed jury instructions. That refusal was not an abuse of the trial court's discretion. *Hernandez*, 45 N.E.3d at 376.

# Firearm Sentence Enhancement

[14]  Hill challenges the five-year sentence enhancement the trial court entered pursuant to Indiana Code Section 35-50-2-11. Indiana Code section 35-50-2-11 (2014), the firearm enhancement statute, provides:

> (a) As used in this section, "firearm" has the meaning set forth in IC 35-47-1-5.
>
> (b) As used in this section, "offense" means:
>
> > (1) a felony under IC 35-42 that resulted in death or serious bodily injury;
> >
> > (2) kidnapping; or
> >
> > (3) criminal confinement as a Level 2 or Level 3 felony.
>
> (c) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.
>
> (d) If the person was convicted of the offense in a jury trial, the jury shall reconvene to hear evidence in the enhancement hearing. If the trial was to the court, or the judgment was entered

on a guilty plea, the court alone shall hear evidence in the enhancement hearing.

(e) If the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense, the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years.

[15]   Hill was indicted with criminal confinement as a Level 3 felony, Appellant's App. at 106, and the jury returned a verdict of guilty on that count, i.e., Count IV. Hill was also indicted with the use of a firearm "in the commission of criminal confinement as a Level 2 or Level 3 felony," *Id*. at 121, and the trial court found him guilty on that count, i.e., Count XVIII. However, due to double jeopardy concerns, the trial court only entered a judgment of conviction on Count I (conspiracy to commit robbery), Count II (robbery), Count XVI (carrying a handgun without a license), Count XVII (obstruction of justice), Count XVIII (use of firearm in commission of an offense for purposes of sentence enhancement), and Count XIX (perjury). For all remaining counts, including Count IV (criminal confinement as a Level 3 felony), the trial court did not enter judgments of conviction but rather merged them with Count II (robbery).

[16]   Hill correctly points out that Count II, robbery as a Level 3 felony, cannot support a firearm sentence enhancement. Count II involves robbery while armed with a deadly weapon or that results in *bodily injury*, I.C. § 35-42-5-1(a),

but the firearm enhancement statute only applies to felonies under IC 35-42 that result in *serious* bodily injury, I.C. § 35-50-2-11(b). *Compare* I.C. § 35-31.5-2-29 (defining "bodily injury" as "any impairment of physical condition, including physical pain"), *with* I.C. § 35-31.5-2-292 (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus."). The evidence shows that Hill was armed with a gun during the robbery and that bank teller Olivio "blacked out a little bit" and suffered a concussion as a result of the blow to her head with a firearm. Tr. Vol. II at 85. Thus, the State only charged Hill with robbery while armed with a deadly weapon or involving "bodily injury"—a Level 3 felony—and the evidence supports the finding Hill committed that offense, rather than one involving "serious" bodily injury. I.C. § 35-42-5-1(a).

[17] However, the State contends that Count IV—criminal confinement as a Level 3 felony—supported the five-year sentence enhancement pursuant to Indiana Code Section 35-50-2-11(b)(3), even though Count IV was merged and the trial court did not enter a judgment of conviction on it. The State avers that the language in section (e) of the firearm enhancement statute—which states that the court may enhance a sentence if "the state has proved beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense"—does not require a judgment of conviction of the enumerated offense, only that the State prove such offense beyond a reasonable

doubt. And the State notes that it did prove Count IV beyond a reasonable doubt, as shown by the jury's guilty verdict on that count.

[18] Resolution of this issue requires that we construe the meaning of Indiana Code Section 35-50-2-11, the firearm enhancement statute. Statutory construction and interpretation are matters of law and we review them de novo. *E.g.*, *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016).

> When construing a statute our primary goal is to ascertain the legislature's intent. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). To discern that intent, we look first to the statutory language itself and give effect to the plain and ordinary meaning of statutory terms. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) (quotation omitted). However, if a statute admits of more than one interpretation, then it is ambiguous; and we thus resort to rules of statutory interpretation so as to give effect to the legislature's intent. *Adams*, 960 N.E.2d at 798. "For example, we read the statute as whole, avoiding excessive reliance on a strict, literal meaning or the selective reading of individual words." *Id.* And we seek to give a practical application of the statute by construing it in a way that favors public convenience and avoids an absurdity, hardship, or injustice. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005). Further, criminal statutes must be strictly construed against the State, and "may not be enlarged beyond the fair meaning of the language used...." *Yao v. State*, 975 N.E.2d 1273, 1279 (Ind. 2012) (internal citation omitted).

> *Id.*

[19] The State cites no authority—other than the language of the statute itself—for its contention that a sentence enhancement can be applied to a crime for which a defendant was not convicted. Yet it is well-settled that a sentence cannot be based on a jury verdict of guilty unless a judgment of conviction is entered on that verdict. *See, e.g.*, *Jerden v. State*, 37 N.E.3d 494, 501 (Ind. Ct. App. 2015) (quoting *Haddix v. State*, 827 N.E.2d 1160, 1165 (Ind. Ct. App. 2005), *trans. denied*) ("'A verdict is the jury's finding of guilt, but such finding carries no legal consequences unless the trial court enters a judgment of conviction on the verdict.'")

> A verdict of guilty can certainly be a significant legal event, but only if a court later enters judgment on it. … [A] verdict of guilt on which no judgment or sentence has been entered would not constitute legal grounds for incarceration. We treat the judgments and sentences entered by courts in a different way [than we treat jury verdicts alone].

*Carter v. State*, 750 N.E.2d 778, 780 (Ind. 2001) (explaining why it was not necessary for double jeopardy purposes to vacate the jury's guilty verdict on a lesser included offense).

[20] Moreover, the State emphasizes the "proved beyond a reasonable doubt" language of section (e) of the statute while ignoring section (d), which clearly requires a hearing on an enhancement after "the person was *convicted* of the offense." I.C. § 35-50-2-11(d) (emphasis added). But when we interpret a statute, we examine the statute as a whole and "avoid interpretations that depend on selective reading of individual words that lead to irrational and

disharmonizing results." *ESPN, Inc. v. University of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016) (quotation and citation omitted). The only harmonious interpretation of both sections (d) and (e) of the firearm enhancement statute is that section (d) requires a hearing on enhancement if the defendant is *convicted* of an enumerated offense and, if the trier of fact at the hearing finds that the State proved beyond a reasonable doubt that the defendant used a firearm while engaging in the offense *of which he was convicted*, the court may enhance the sentence for the underlying offense.

[21] Given well-settled case law, the language of the statute as a whole, and our rule of lenity requiring that penal statutes be construed strictly against the State, we reach the logical conclusion that a sentence cannot be enhanced pursuant to the firearm enhancement statute unless a judgment of conviction is entered against the defendant for one of the enumerated offenses. Therefore, Hill's firearm enhancement cannot be supported by the jury verdict finding him guilty of criminal confinement as a Level 3 felony because the trial court did not enter a judgment of conviction on that verdict.

[22] The trial court improperly enhanced Hill's robbery sentence by five years; the crime of robbery as a Level 3 felony cannot support a firearm sentence enhancement under Indiana Code Section 35-50-2-11, nor was there any other *conviction* that would support such an enhancement. Therefore, we must reverse the judgment of conviction for Count XVIII, Use of Firearm in Commission of an Offense, and vacate the five-year sentence enhancement entered pursuant to

Indiana Code Section 35-50-2-11.[23]  *See e.g.*, *Hull v. State*, 799 N.E.2d 1178, 1181 (Ind. Ct. App. 2003) ("A sentence in contravention of statutory authority constitutes "fundamental error" and cannot be ignored by a court of review.").

# Conclusion

[23] The trial court did not abuse its discretion when it refused to give Hill's proffered jury instruction on conspiracy, since the substance of that instruction was addressed by the other instructions the court gave the jury.  Therefore, we affirm Hill's conspiracy conviction under Count I.  However, the trial court erred in enhancing Hill's sentence by five years under the firearm enhancement statute because Hill was not convicted of any offense that would support such an enhancement.  Thus, we reverse the judgment of conviction for Count XVIII and vacate the five-year sentence enhancement entered pursuant to Indiana Code Section 35-50-2-11.

---

[23] The State has provided us with no authority for its request that we vacate the robbery conviction—a perfectly legal judgment—for the sole purpose of ordering the trial court to enter judgment of conviction on a jury verdict on a different charge—i.e., criminal confinement as a Level 3 felony—that would support a firearm enhancement.  Unlike in *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015), cited by the State, we have no double jeopardy violation to remedy here as there are not two convictions involving the same evidence, but only one conviction (robbery) and one jury verdict (criminal confinement).  And, as we have already noted, a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is "unproblematic" as far as double jeopardy is concerned. *Carter,* 750 N.E.2d at 781.

In short, if the State wanted Hill's sentence enhanced for use of a firearm, it should have requested that the trial court enter judgment on a charge that would support such an enhancement.

Affirmed in part, reversed in part.

Crone, J., and Brown, J., concur.